**John TURPIN and Christina Turpin, Plaintiffs,**

v.

**MORI SEIKI CO., LTD. and Mori Seiki USA, Inc., Defendants.**

**No. Civ. A. 95–40031–NMG.**

United States District Court, D. Massachusetts.

July 12, 1999.

David E. Hoyt, The Law Offices of David E. Hoyt, P.C., David E. Hoyt, Esquire, Worcester, MA, for Plaintiffs.

Joel F. Pierce, Pierce, Davis, Fahey, Perritano, Boston, MA, for Defendants.

## MEMORANDUM AND ORDER

GORTON, District Judge.

Plaintiff John Turpin suffered workplace injuries while using an engine lathe manufactured by defendant Mori Seiki Co., Ltd., a Japanese corporation, ("MS Ltd."). He and his wife, plaintiff Christina Turpin, brought this action against MS. Ltd. and its wholly-owned American subsidiary, Mori Seiki USA, Inc. ("MS USA"), for products liability. Pending before this Court is the plaintiffs' motion to reconsider its previous order allowing MS Ltd.'s motion to dismiss for lack of personal jurisdiction (Docket No. 31).

### I. *Background and Procedural History*

### A. Mori Seiki in Japan and America

MS Ltd. has been a Japanese manufacturer of machine tools since 1948. It attends to its domestic market directly. Prior to 1983, however, it relied entirely on two exporting companies, Yamazen and Maruka, to sell and service its products in markets outside of Japan. Both exporting companies had subsidiaries in the United States to serve the United States market. In some regions, the subsidiaries would sell MS Ltd. products to dealers, who would, in turn, sell to customers. In other regions, the subsidiaries sold MS Ltd. products straight to end-users.

In 1983, MS Ltd. set up a wholly-owned American subsidiary, MS USA, to conduct sales of its products in the United States through authorized dealers, gradually replacing the Yamazen and Maruka subsidiaries.[1] MS USA is headquartered in

---

1. Phase-out of sales by MS Ltd. through the export company subsidiaries was complete in about 1986, although those subsidiaries con-

Texas, but maintains offices around the country.

## B. The Plaintiffs and Their Lawsuit

Plaintiff John Turpin ("Turpin") was seriously injured in an industrial accident on February 3, 1992. The accident occurred at his workplace in Charlton, Massachusetts when he was inadvertently dragged into an engine lathe. The lathe was a Model # MR 1500 H. It was manufactured by MS Ltd., but production of that particular model ceased sometime before 1975. The record does not reveal exactly how or when the particular lathe came into the possession of Turpin's employer, but it does indicate that the machine was imported by Yamazen at a time when a company called "Methods Machine Tool" was the distributor for MS Ltd. products in the region.

Turpin and his wife filed suit against MS Ltd. in Massachusetts state court in January, 1995. Their complaint and a summons was sent by certified mail to defendant MS Ltd. at the Texas address of MS USA. No individual recipient was designated in the summons or the mailing. The return receipt was signed by Sherry Cook, an accounting clerk working for MS USA.

MS Ltd. removed the suit to this Court in February, 1995. The following May, the Turpins moved to amend their complaint in order to add MS USA as a defendant. In June 1995, MS Ltd. moved to dismiss for insufficient service of process and lack of personal jurisdiction. Both motions were referred to Magistrate Judge Swartwood, who recommended: (i) granting the plaintiffs' motion to amend and (ii) dismissing the case on both grounds asserted by MS Ltd. This Court accepted and adopted the Magistrate Judge's recommendation on October 5, 1995.

In November, 1997, the plaintiffs moved for reconsideration of the dismissal for lack of personal jurisdiction, citing an MS

tinued to provide maintenance service for MS

Ltd. brochure which represented that the company maintained an office in Boston. This court allowed discovery to proceed on the jurisdictional issue.

## II. *Analysis*

### A. Personal Jurisdiction

The exercise of personal jurisdiction by this Court is subject to the same limitations as those applicable to the Massachusetts state courts. *See* Fed.R.Civ.P. 4(k)(1)(A). Assertions of personal jurisdiction by Massachusetts state courts are governed by the Massachusetts long-arm statute, which provides, in pertinent part:

A court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action in law or equity arising from the person's

(a) transacting any business in this commonwealth;

(b) contracting to supply services or things in this commonwealth;

(c) causing tortious injury by act or omission in this commonwealth;

(d) causing tortious injury in this commonwealth by an act or omission outside this commonwealth if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this commonwealth;

M.G.L. c. 223A, § 3.

Any exercise of personal jurisdiction under this statute must also comport with the due process guarantees of the United States Constitution. *See Asahi Metal Indus. Co., Ltd. v. Superior Court of California*, 480 U.S. 102, 108, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987) ("The Due Process Clause of the Fourteenth Amendment limits the power of a state court to exert personal jurisdiction over a nonresident defendant."). At the same time, the Massachusetts long-arm statute:

Ltd. machines in some regions.

imposes constraints on personal jurisdiction that go beyond those imposed by the Constitution.... We must therefore find sufficient contacts between the defendant and the forum state to satisfy both the Massachusetts long-arm statute and the Constitution.

*Nowak v. Tak How Invs., Ltd.,* 94 F.3d 708, 712 (1st Cir.1996) (affirming exercise of personal jurisdiction).

The Turpins have argued in favor of jurisdiction under subsections (a), (b), (c) and (d) of the long-arm statute. MS Ltd. counters by emphasizing its separateness from its own American subsidiary and the other entities which have supplied its products to customers in the United States.

### 1. Constitutional Criteria

The United States Supreme Court has prescribed a two-step inquiry by which to evaluate the constitutionality of an extraterritorial assertion of personal jurisdiction over a defendant. First, a court must evaluate "whether the defendant purposefully established 'minimum contacts' in the forum State." *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 474, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) (referring to this criterion as the " 'purposeful availment' requirement"). In that case the Supreme Court held:

> Once it has been decided that a defendant purposefully established minimum contacts within the forum State, these contacts may be considered in light of other factors to determine whether the assertion of personal jurisdiction would comport with 'fair play and substantial justice.'

*Id.* at 476, 105 S.Ct. 2174.

The requirements of "purposeful availment" and "fair play and substantial justice" are not mutually exclusive, because "considerations [bearing upon the fairness-and-justice inquiry] sometimes serve to establish the reasonableness of jurisdiction upon a lesser showing of minimum contacts than would otherwise be required."

*Id.* at 477, 105 S.Ct. 2174. *See also Nowak,* 94 F.3d at 717 (explaining that the thresholds for minimum contacts and fair play/substantial justice vary inversely).

The United States Supreme Court revisited the issue of due process limits on long-arm jurisdiction in the case of *Asahi Metal, supra,* stating refinements of the minimum contacts and the fair-play/substantial-justice criteria. The case arose from a fatal motorcycle accident, allegedly caused by a defective tire. *Id.* at 105–106, 107 S.Ct. 1026. Suit was filed in state court in California. *Id.* After the plaintiff's claims had been settled, there remained before the trial court only an indemnity claim between the defendant, a Japanese manufacturer of tire valve stems, and one of its customers, a Taiwanese inner tube manufacturer. *Id.* at 106, 107 S.Ct. 1026. The Court was unanimous in concluding that due process shielded the defendant from an assertion of personal jurisdiction with respect to the indemnity claim. *Asahi* has informed subsequent decisional law on extraterritorial assertions of personal jurisdiction over foreign defendants.

### a. Minimum Contacts

▆ A plurality of the *Asahi* Court concluded that

> [t]he placement of a product into the stream of commerce, without more, is not an act of the defendant purposefully directed toward the forum State.....
> [A] defendant's awareness that the stream of commerce may or will sweep the product into the forum State does not convert the mere act of placing the product into the stream into an act purposefully directed toward the forum state.

*Id.* at 112, 107 S.Ct. 1026.

The plurality noted that Asahi did no business in California, had no office, agents, employees or property there, did not advertise or otherwise solicit business there, and did not design its product "in anticipation of sales in California." *Id.* It also observed that Asahi did not "create,

control or employ the distribution system that brought its valves to California." *Id.*

As examples of additional conduct indicative of "purposeful availment", the plurality suggested:

—designing the product for the market in the forum state;

—advertising in the forum state;

—establishing channels for providing regular advice to customers in the forum state;

—marketing the product through a distributor who has agreed to serve as the sales agent in the forum state.

*Id.*

■ The First Circuit has expressly adopted the *Asahi* plurality's view as governing law. *See Rodriguez v. Fullerton Tires Corp.*, 115 F.3d 81, 85 (1st Cir.1997) (affirming dismissal for want of personal jurisdiction over defendant); *Boit v. Gar–Tec Products, Inc.*, 967 F.2d 671 (1st Cir. 1992) (same). The First Circuit has formulated a test of minimum contacts that has two aspects. *Nowak*, 94 F.3d at 713. One aspect, dubbed "relatedness," focuses on the relationship between the plaintiff's cause of action and the defendant's contacts with the forum state. *Id.* "Purposeful availment" is the other aspect, and it "focuses on the deliberateness of the defendant's contacts" with the forum state. *Id.*

#### i. "Relatedness"

As to relatedness, the court looks for proximate causation between the defendant's contacts with the forum state and the alleged wrong asserted in the plaintiff's suit. *Id.* at 715. The proximate cause standard may be relaxed under compelling circumstances. *Id.* at 715–716.

In any event, relatedness is not a seriously debatable issue here. Such contacts as defendant MS Ltd. made with Massachusetts had to do with its products. Turpin alleges that he was injured by one of those products. There is no incongruity in

the relationship between MS Ltd.'s alleged contacts and the alleged tort.

#### ii. "Purposeful Availment"

■ With respect to purposeful availment, it may aid the analysis to begin with some core principles:

Our two focal points are voluntariness and forseeability..... The defendant's contacts with the forum state must be voluntary—that is, not based on the unilateral actions of another party or a third person..... In addition, the defendants contacts with the forum state must be such that he should reasonably anticipate being haled into court there.

*Id.* at 716. In the same decision the Court held that a defendant need only have one contact with the forum state to be subjected to jurisdiction, so long as that contact is "meaningful." *Id.* at 717.

■ The fact that an overseas manufacturer dispatches its products to a forum state through intermediaries rather than doing so directly is not a bar to the exercise of jurisdiction over that manufacturer. *See Benitez–Allende v. Alcan Aluminio do Brasil, S.A.*, 857 F.2d 26, 29 (1st Cir.1988) (defendant used an "export advisor"). However, " 'mere awareness' that a product may end up in the forum state does not constitute 'purposeful availment' ...." *Boit*, 967 F.2d at 683. In other words, if intermediaries act unilaterally to introduce a manufacturer's products into the forum state, the manufacturer cannot be said to have purposefully engaged in forum activities, even if it knew of the unilateral action.

■ This court is faced with the question of whether the intermediaries of MS Ltd. acted unilaterally in importing its products to Massachusetts. The record, elliptical as it is, indicates otherwise. First, MS Ltd. provided to the exporting companies which originally sent its machines to the United States brochures printed in English. It did so for the purpose of aiding the sales efforts of the

exporting companies. That conduct indicates "an intent or purpose to serve the market in the forum" of the United States generally. *Asahi,* 480 U.S. at 112, 107 S.Ct. 1026.

Additional evidence is required to show an intent to serve customers in Massachusetts specifically. Plaintiffs offer that evidence in the form of marketing material, printed by MS Ltd., which represents that MS Ltd. has an overseas office in Boston, Massachusetts. MS Ltd. made that representation in its marketing materials at least since 1979 and continues to do so today.

MS Ltd. now contends that it does not actually have an overseas office in Boston and that whenever it made such a representation, it was merely designating an authorized dealer or the office of its wholly-owned subsidiary as an overseas office. The defendant can explain the facts, but it can't change them. Whether MS Ltd. was designating its own facility or the facility of an intermediary or subsidiary, the fact remains that it was explicitly holding itself out to the public as ready, willing and able to do business in Boston. It is difficult to imagine a more intentional or deliberate effort to "serve the market in the forum" of the Commonwealth.

### b. Fair Play and Substantial Justice

■ Plaintiff's argument for exercising personal jurisdiction over MS Ltd. is strengthened when the second criterion— traditional notions of fair play and substantial justice—is considered. The United States Supreme Court has enumerated a list of factors to be weighed in evaluating the reasonableness of an assertion of jurisdiction. *Asahi,* 480 U.S. at 113, 107 S.Ct. 1026. Those factors, often referred to as "the Gestalt factors," encompass the competing interests of the plaintiff, the defendant and the judiciary, as well as governmental policy considerations. *Nowak,* 94 F.3d at 717–718.

In the *Asahi* case, the Gestalt Factors all pointed away from an assertion of juris-

diction; neither the Taiwanese cross-claimant nor the California judiciary had a strong interest in seeing the claim adjudicated in California, and the burden on the Japanese defendant to try the case in California would have been heavy. *Id.* at 114–116, 107 S.Ct. 1026. The Court concluded that an exercise of personal jurisdiction would have been unfair under those circumstances. *Id.* at 116, 107 S.Ct. 1026.

In the present case, the Gestalt factors point in the opposite direction. The plaintiff has chosen to seek recovery in the forum of his home state for what is alleged to be grievous injuries, and his task would be infinitely more burdensome if he were forced to litigate in Japan. *Cf. Nowak,* 94 F.3d at 718 (where deference was accorded to the plaintiff's choice of a Massachusetts forum as obviously more convenient).

The Commonwealth "has a significant interest in obtaining jurisdiction over a defendant who causes tortious injury within its borders" and "in providing its citizens with a convenient forum in which to assert their claims." *Id.* Massachusetts also has a strong policy interest "in protecting its citizens from injuries caused by defective products," regardless of where those products were originally manufactured. *Benitez–Allende,* 857 F.2d at 30. The judiciary has an "interest in obtaining the most effective resolution of the controversy" available. *See Nowak,* 94 F.3d at 718–719. This factor is not always decisive, but the Court notes that the plaintiff has chosen the forum in which the accident actually occurred, making convenient access to eyewitnesses and physical evidence more likely. *Id.* at 718.

With respect to the burden on the defendant, the First Circuit has noted that "it is almost always inconvenient and costly for a party to litigate in a foreign jurisdiction," and it has taken the position that for this particular Gestalt factor to have any significance, the defendant must demonstrate that "exercise of jurisdiction in the present circumstances is onerous in a special, un-

usual, or other constitutionally significant way." *Id.* No such showing has been made here.

In sum, the Gestalt factors are firmly oriented in the direction of finding personal jurisdiction. Given the outcome of the Gestalt factor analysis, the plaintiff has met the threshold of showing minimum contacts sufficient to satisfy due process under the Constitution.

## 2. The Massachusetts Long-arm Statute

■ Analysis under the Massachusetts Long-arm statute is simplified by an opinion of the Massachusetts Appeals Court in a case with facts very similar to the present suit. In *Heins v. Wilhelm Loh Wetzlar Optical Machinery*, 26 Mass.App.Ct. 14, 522 N.E.2d 989 (1988) the plaintiff was a worker injured while installing a machine manufactured by the defendant, a company located in West Germany. The defendant sold its machines to a Swiss intermediary, who, in turn, sold to an exclusive distributor in the United States. *Id.* at 991. The defendant had no direct contact with the United States nor "any control over the marketing, price or sales of its machines in the United States." *Id.* at 992. Nevertheless, the Massachusetts Appeals Court found that the defendant "derived substantial revenue" from use of its products in the Commonwealth, thereby falling within the reach of M.G.L. c. 223A, § 3(d). *Id.* at 993.

Unlike the court in *Heins*, we do not have specific sales figures from the defendant, but we know that 1) there has been a distributor for Mori Seiki machines in this region for many years and 2) MS Ltd. has consistently designated the local facility of a subsidiary as its overseas office in Boston. That conduct supports an inference that significant revenues have been generated in this forum. In any event, MS Ltd. has certainly engaged in a "persistent course of conduct" in Massachusetts by

publicly acknowledging that it has its own overseas office in Boston. Consequently, this Court can exercise personal jurisdiction consistent with the state long-arm statute and the United States Constitution.

## B. Service of Process

The Court's finding, upon reconsideration, that MS Ltd. is subject to its personal jurisdiction revives the issue of the plaintiffs' defective service of process. In the past, courts presented with the defense of insufficient service of process had "broad discretion to dismiss the action or to retain the case but quash service that has been made on the defendant." *Gipson v. Township of Bass River*, 82 F.R.D. 122, 126 (D.N.J.1979) (citations omitted). Still, dismissal for failure to effect service would have been inappropriate where the plaintiff had a reasonable prospect of obtaining proper service on the defendant. *Novak v. World Bank*, 703 F.2d 1305, 1310 (D.C.Cir. 1983) (vacating dismissal).

However, amendments to Fed.R.Civ.P. 4 in 1983 and 1993 established a 120–day time limit for achieving valid service of process:

> If service of the summons and complaint is not made upon a defendant within 120 days after filing the complaint, the court, upon motion or on its own initiative after notice to the plaintiff, shall dismiss the action without prejudice as to that defendant or direct that service be effected within a specified time; provided that if the plaintiff shows good cause for the failure, the court shall extend the time for service for an appropriate period.

Fed.R.Civ.P. 4(m) (captioned "Time Limit for Service"). This mandatory dismissal can be fatal if the statute of limitations has already run on a plaintiff's cause of action. *See Benjamin v. Grosnick*, 999 F.2d 590, 591 & n. 3 (1st Cir.1993) (dismissal, even if done without prejudice, would still cause plaintiff's claims to be time-barred).[2]

---

**2.** Under Massachusetts law, if the complaint were dismissed for defective service, the Tur-

pins would have one year from the date of

Fortunately for the Turpins, an exception to the 120–day time limit has been carved out for service upon defendants in foreign countries. *See* Fed. R.Civ.P. 4(m), 4(h)(2), 4(f). Because MS Ltd. insists that it must be served in Japan, the exception applies to the present case. This Court will not dismiss the case for defective service, but will quash the prior service and retain the case pending proper service upon MS Ltd. in Japan.[3]

## ORDER

For the foregoing reasons:

1) plaintiffs' motion to reconsider (Docket No. 31) is **ALLOWED;**

2) upon reconsideration, the motion of defendant, Mori Seiki Co. Ltd., to dismiss (Docket No. 16) is **DENIED;**

3) the Plaintiffs' service of process upon Mori Seiki Co. Ltd. at the address of Mori Seiki USA in Texas is **QUASHED;** and

4) the Plaintiffs shall have 60 days from the date of entry of this order in which to achieve good and sufficient service of process on Mori Seiki Co. Ltd.

So ordered.

dismissal to effect service of process on MS Ltd. M.G.L. c. 260, § 32.

**3.** Because the case is now in federal court, the Federal Rules of Civil Procedure apply, but the provisions germane to the Turpins' task merely incorporate state law. *See* Fed. R.Civ.P. 4(k)(1)(A).