# IN THE SUPREME COURT OF IOWA

No. 13–1756

Filed January 30, 2015
Amended April 7, 2015

**SIOUX PHARM, INC.** and **SIOUX BIOCHEMICAL, INC.,**

Appellees,

vs.

**SUMMIT NUTRITIONALS INTERNATIONAL, INC.,**

Appellant.

---

Appeal from the Iowa District Court for Sioux County, Duane E. Hoffmeyer, Judge.

Defendant appeals order denying motion to dismiss for lack of personal jurisdiction. **AFFIRMED.**

Daniel J. Fischer, Brian J. Koenig, and J. Daniel Weidner of Koley Jessen, P.C., L.L.O., Omaha, Nebraska, for appellant.

Anthony L. Osborn and Jeana L. Goosmann of Goosmann Law Firm, PLC, Sioux City, for appellees.

**WATERMAN, Justice.**

This appeal provides our first opportunity to address when statements on a website support personal jurisdiction and the impact of recent United States Supreme Court precedent on the showing required for general jurisdiction. Specifically, we must decide whether a nonresident corporation's inaccurate statement on its passive website—that it had a manufacturing facility in Sioux Center, Iowa—subjected it to personal jurisdiction in Iowa in a lawsuit by an Iowa plaintiff alleging unfair competition. The district court denied the nonresident defendant's motion to dismiss, ruling that general jurisdiction was established simply because its website held this defendant out as having an Iowa manufacturing facility. The Sioux Center facility actually is owned and operated by a separate Iowa defendant that supplies the product to the nonresident defendant. We allowed the nonresident defendant's interlocutory appeal of the jurisdictional ruling.

For the reasons explained below, we hold the district court erred by exercising general jurisdiction over Summit based solely on the inaccurate statement on its passive website. Recent precedent requires proof the nonresident defendant is "essentially at home in the forum State" to establish general jurisdiction. *See Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. ___, ___, 131 S. Ct. 2846, 2851, 180 L. Ed. 2d 796, 803 (2011). That proof is lacking here. Nevertheless, we hold the totality of the nonresident's contacts with Iowa, including its website statement, Iowa supply contract, and its sale of the product to the plaintiff in Iowa were sufficient to subject it to specific jurisdiction here on claims related to those contacts. We therefore affirm the order denying its motion to dismiss on this alternative ground.

## I. Background Facts and Proceedings.

Plaintiff Sioux Pharm, Inc.[1] is an Iowa corporation that manufactures chondroitin sulfate, a supplement for joint health usually mixed with glucosamine to help lessen the effects of osteoarthritis. Eagle Laboratories, Inc. (Eagle Labs) is an Iowa corporation and a competitor of Sioux Pharm. Eagle Labs sells and ships chondroitin sulfate monthly to Summit Nutritionals International, Inc. (Summit), a New Jersey corporation with its principal place of business in Branchburg, New Jersey. Summit packages and resells the chondroitin sulfate.

At the time this lawsuit was filed, Summit's website erroneously claimed that Summit had a manufacturing facility in Sioux Center, Iowa. The website read, "Manufacturing Facility, Summit Nutritionals International, Inc.," and for contact information listed a Sioux Center, Iowa physical address and an email address. In fact, the Sioux Center facility at that physical address has always been owned and operated by Eagle Labs. Summit admits it listed the facility on its website to inform its customers as to the Iowa source of Summit's chondroitin sulfate, which is derived from bovine organs.

Summit actually has no Iowa office, agent, or employees. It has never been registered to do business in Iowa, and neither owns nor leases any real or personal property in Iowa. Summit has no Iowa bank accounts and has never been a party in litigation in Iowa before this case. Summit has never specifically directed advertising at Iowa markets or sold its product to anyone in Iowa except for a sample purchased by Sioux Pharm to test for purposes of this lawsuit. Summit purchases its

---

[1]Plaintiff Sioux Biochemical, Inc. is a sister corporation to Sioux Pharm, Inc. We will refer to the entities together as Sioux Pharm.

chondroitin sulfate from Eagle Labs under an annual contract to supply Summit's requirements through monthly shipments. Summit's president traveled to Iowa once to inspect Eagle Labs' facility, but he flew in and out of an airport in South Dakota and only spent a few hours in Iowa. No other employee of Summit has ever visited Iowa on its behalf.

Sioux Pharm filed suit against Eagle Labs and its principals, Dana Summers, Robert Den Hoed, and John Ymker on March 8, 2012. The initial pleading alleged claims for the misappropriation of trade secrets, which are the subject of a separate, pending interlocutory appeal. *See Sioux Pharm, Inc. v. Eagle Labs, Inc.*, No. 13–1756 (Iowa filed September 27, 2013). Sioux Pharm's second amended petition, the operative pleading here, was filed April 23, 2013. That pleading added claims of unfair competition, intentional interference with contractual relationships, and civil conspiracy and named Summit and Federal Laboratories Corporation (Federal Labs), a New York corporation, as additional defendants. Sioux Pharm specifically alleged Summit, Federal Labs, and Eagle Labs conspired to distribute adulterated and diluted chondroitin sulfate while misrepresenting its purity, in violation of § 1125(a) of the Lanham Act, 15 U.S.C. §§ 1051–1141n (2012). On June 7, the district court, pursuant to Iowa Rule of Civil Procedure 1.914, granted Summit's motion to bifurcate the trade-secret claims from the unfair-competition claims.

Both Summit and Federal Labs moved to dismiss for lack of personal jurisdiction. Both nonresident defendants filed affidavits attesting to their lack of contacts with Iowa. Sioux Pharm filed resistances and argued as to Summit that its website statement along with its contract with Eagle Labs and site visit there were sufficient to subject it to general jurisdiction or, alternatively, specific jurisdiction.

The district court granted Federal Labs' motion, determining that Sioux Pharm "failed to present a prima facie case" sufficient to justify personal jurisdiction on a conspiracy theory and that Federal Labs lacks contacts with Iowa sufficient for general jurisdiction. However, the district court denied Summit's motion, stating:

> Although Summit presents this Court with many facts to establish that it has no systematic or continuous ties to the State of Iowa, this Court does not find those facts to be persuasive. Although Summit may not have an office or real property in Iowa, it holds itself out as having both. Summit's website clearly states that it has a manufacturing facility in Sioux Center, Iowa. . . . Regardless of Summit's intent when posting that information, and regardless of what ties Summit has to the manufacturing facility, by asserting that it has continuous and systematic ties with Iowa, Summit has availed itself [of] Iowa Courts.

The district court did not reach the specific jurisdiction theory. The district court also granted motions for partial summary judgment, dismissing the civil conspiracy claims against all defendants, including Summit, by finding "[t]here has been no evidence presented to show a meeting of the minds" or an overt act required to establish liability for civil conspiracy.

We granted Summit's application for interlocutory appeal and retained the appeal to determine if that defendant is subject to personal jurisdiction in Iowa.

## II. Standard of Review.

"We review a district court's decision on a motion to dismiss for lack of personal jurisdiction for correction of errors at law." *Shams v. Hassan*, 829 N.W.2d 848, 853 (Iowa 2013); *see also* Iowa R. App. P. 6.907. We are not bound by the court's conclusions of law or application of legal principles. *Shams*, 829 N.W.2d at 853. The district court's

factual findings are binding on appeal if supported by substantial evidence. *Id.*

" ' "[W]e accept as true the allegations of the petition and the contents of uncontroverted affidavits." ' " *Id.* (quoting *Addison Ins. Co. v. Knight, Hoppe, Kurnik & Knight, L.L.C.,* 734 N.W.2d 473, 476 (Iowa 2007)). "After the plaintiff makes a prima facie case showing that personal jurisdiction is appropriate, the burden shifts to the defendant to rebut that showing." *Id.*

We may affirm the district court on an alternative ground that is supported by the record and urged by the prevailing party in district court and on appeal. *Hawkeye Foodserv. Distrib., Inc. v. Iowa Educators Corp.,* 812 N.W.2d 600, 609 (Iowa 2012).

**III.  Analysis.**

We must decide whether the Due Process Clause of the United States Constitution permits the exercise of personal jurisdiction over Summit.  This case requires us to determine the jurisdictional effect of an erroneous statement on defendant's passive website that it has a manufacturing facility in Iowa.  We conclude the district court erred in ruling that Summit was subject to general jurisdiction in Iowa based on that website statement alone.  We further conclude that the totality of Summit's contacts with Iowa falls short of establishing general jurisdiction under *Goodyear.*  564 U.S. at ___, 131 S. Ct. at 2851, 180 L. Ed. 2d at 803.  But, we affirm the jurisdictional ruling on the alternative ground, supported by the record and urged by Sioux Pharm in district court and on appeal, that Summit is subject to specific jurisdiction here.

We begin by reviewing well-established principles of personal jurisdiction.  A state's power to exercise personal jurisdiction over a

nonresident defendant is limited by both the state's jurisdictional rules and the Due Process Clause of the Fourteenth Amendment. *See Ostrem v. Prideco Secure Loan Fund, LP*, 841 N.W.2d 882, 891 (Iowa 2014). Iowa's jurisdictional rule authorizes the widest exercise of personal jurisdiction allowed by the Due Process Clause. *Id.* (citing Iowa R. Civ. P. 1.306, which states that "every corporation, individual, personal representative, partnership or association that shall have the necessary minimum contact with the state of Iowa shall be subject to the jurisdiction of the courts of this state"). Therefore, we will focus on the constitutional requirements for personal jurisdiction.

"The touchstone of the due-process analysis remains whether the defendant has sufficient 'minimum contacts with [the forum state] such that the maintenance of the suit does not offend " 'traditional notions of fair play and substantial justice.' " ' " *Id.* (quoting *Viasys., Inc. v. EBM–Papst St. Georgen GmbH & Co., KG*, 646 F. 3d 589, 594 (8th Cir. 2011)). "Fairness is the crux of the minimum-contacts analysis." *Shams*, 829 N.W.2d at 854. The defendant must have sufficient contacts to " 'reasonably anticipate being haled into court' in the forum state." *Ostrem*, 841 N.W.2d at 891–92 (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S. Ct. 559, 567, 62 L. Ed. 2d 490, 501 (1980)). Therefore, "it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475, 105 S. Ct. 2174, 2183, 85 L. Ed. 2d 528, 542 (1985) (citation and internal quotation marks omitted). The purposeful-availment requirement prevents defendants from being forced to defend themselves in a jurisdiction "as a result of 'random,' 'fortuitous,' or 'attenuated'

contacts." *Id.* It also prevents defendants from being haled into court by the unilateral actions of plaintiffs. *Id.*

There are two forms of personal jurisdiction, general jurisdiction and specific jurisdiction. *Shams,* 829 N.W.2d at 855. General jurisdiction " 'refers to the power of a state to adjudicate any cause of action involving a particular defendant, regardless of where the cause of action arose.' " *Ostrem,* 841 N.W.2d at 892 (quoting *Sondergard v. Miles, Inc.,* 985 F.2d 1389, 1392 (8th Cir. 1993)). General jurisdiction allows suits on claims unrelated to the defendant's contacts with the forum and exists if the defendant's " 'affiliations with the State are so "continuous and systematic" as to render [the defendant] essentially at home in the forum State.' " *Daimler AG v. Bauman,* 571 U.S. ___, ___, 134 S. Ct. 746, 754, 187 L. Ed. 2d 624, 633–34 (2014) (quoting *Goodyear,* 564 U.S. at ___, 131 S. Ct. at 2851, 180 L. Ed. 2d at 803). "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as *at home."* *Goodyear,* 564 U.S. at ___, 131 S. Ct. at 2853–54, 180 L. Ed. 2d at 806 (emphasis added).

By contrast, specific jurisdiction " 'refers to jurisdiction over causes of action arising from or related to a defendant's actions within the forum state.' " *Ostrem,* 841 N.W.2d at 892 (quoting *Sondergard,* 985 F.2d at 1392). Specific personal jurisdiction has two requirements:

> "Where a forum seeks to assert specific jurisdiction over an out-of-state defendant who has not consented to suit there, [due process] is satisfied if the defendant has 'purposefully directed' his activities at residents of the forum and the litigation results from alleged injuries that 'arise out of or relate to' those activities."

*Capital Promotions, L.L.C. v. Don King Prods., Inc.,* 756 N.W.2d 828, 834 (Iowa 2008) (alteration in original) (quoting *Burger King Corp.,* 471 U.S. at

472, 105 S. Ct. at 2182, 85 L. Ed. 2d at 540–41). "A single contact with the forum state can be sufficient to satisfy due process concerns when the plaintiff's claim arises out of the contact." *Shams*, 829 N.W.2d at 855. Physical presence in the forum is not essential, but the court must investigate the nature and quality of the contacts between the defendant and the forum. *See Addison Ins. Co.*, 734 N.W.2d at 478.

With these principles in mind, we examine whether Summit's contacts with Iowa give rise to either general or specific personal jurisdiction. Sioux Pharm relies on three grounds to establish personal jurisdiction over Summit in Iowa: (1) the erroneous statement on Summit's website that it has a manufacturing facility in Iowa, (2) Summit's supply contract purchasing its chondroitin sulfate from Eagle Labs, and (3) the brief Iowa visit and inspection of Eagle Labs by Summit's president.[2] Sioux Pharm argues these grounds support both general and specific jurisdiction over Summit. We begin with the website statement that the district court concluded subjected Summit to general jurisdiction here. We then examine whether the totality of Summit's

_____

[2]Summit also sold one sample of its product in Iowa to Sioux Pharm, which used the sample to test for the purposes of this lawsuit. Summit has made no other sales in Iowa, nor has it specifically directed any advertising at Iowa markets. Sioux Pharm's appellate brief does not argue the lone Iowa sale supports its position, but at oral argument, its counsel urged us to consider that sale as "a factor" establishing personal jurisdiction over Summit. Some federal district courts have noted plaintiffs cannot create personal jurisdiction over a defendant seller merely by purchasing the defendant's product in the forum state. *See, e.g.*, *Mor-Dall Enters., Inc. v. Dark Horse Distillery, LLC*, 16 F. Supp. 3d 874, 880 (W.D. Mich. 2014) (" '[A] plaintiff may not manufacture jurisdiction by engaging in a sale merely to confer jurisdiction in a particular forum.' ") (quoting *Dawson v. Pepin*, No. 1:99-CV-316, 2001 WL 822346, at *4 (W.D. Mich. Mar. 29, 2001)); *Foreign Candy Co. v. Tropical Paradise, Inc.*, 950 F. Supp. 2d 1017, 1032–33 & n.5 (N.D. Iowa 2013) (holding a single sale to plaintiff's representative through a third-party retailer is insufficient to subject defendant to personal jurisdiction in trademark action); *Krepps v. Reiner*, 588 F. Supp. 2d 471, 479 (S.D.N.Y. 2008) ("[P]laintiffs are not permitted to 'manufacture' personal jurisdiction over defendants by orchestrating an in-state web-based purchase of their goods."), *aff'd*, 377 F. App'x 65 (2d Cir. 2010).

contacts with Iowa support general jurisdiction. Finally, we examine whether specific jurisdiction over Summit has been established.

**A. General Jurisdiction Based on Summit's Website.** The district court ruled that Summit is subject to general jurisdiction in Iowa because its website held the corporation out as having an Iowa manufacturing facility, regardless of whether that representation was true. The manufacturing facility is in fact owned and operated by a separate corporation, codefendant Eagle Labs. We hold that website statement is insufficient to subject Summit to general jurisdiction in Iowa under the recent United States Supreme Court decisions requiring a showing that the defendant's " 'affiliations with the State are so "continuous and systematic" as to render [it] essentially at home in the forum State.' " *Daimler AG*, 571 U.S. at ___, 134 S. Ct. at 754, 187 L. Ed. 2d at 633 (quoting *Goodyear*, 564 U.S. at ___, 131 S. Ct. at 2851, 180 L. Ed. 2d at 803). It is undisputed that Summit is a New Jersey corporation with its principal place of business in New Jersey.

Sioux Pharm contends that personal jurisdiction over Summit is established by waiver or estoppel based on Summit's website representation it has an Iowa manufacturing facility. We acknowledge there are circumstances under which personal jurisdiction may be established by waiver, consent, or estoppel. *See, e.g., Ins. Corp. of Ir., Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 704, 102 S. Ct. 2099, 2105, 72 L. Ed. 2d 492, 502 (1982) ("[T]he requirement of personal jurisdiction may be intentionally waived, or for various reasons a defendant may be estopped from raising the issue."). Personal jurisdiction can be waived in several ways. A party could submit to the jurisdiction of the court by appearance. *Id.* at 703, 102 S. Ct. at 2105,

72 L. Ed. 2d at 502.[3]  Moreover, parties may agree contractually to submit to jurisdiction and venue in a given court, which operates as a waiver.  *See id.* at 703–04, 102 S. Ct. at 2105, 72 L. Ed. 2d at 502; *EFCO Corp. v. Norman Highway Constructors, Inc.,* 606 N.W.2d 297, 299 (Iowa 2000) (noting that contractual choice-of-forum clauses have "long been recognized under Iowa law").  Further, the United States Supreme Court has recognized "constructive consent to the personal jurisdiction of the state court in the voluntary use of certain state procedures."  *Ins. Corp. of Ir.,* 456 U.S. at 704, 102 S. Ct. at 2105, 72 L. Ed. 2d at 502 (upholding jurisdiction as discovery sanction).  But, Summit has not waived its objection to jurisdiction in such a manner or otherwise consented to jurisdiction here.  *See Cent. Life Ins. Co. v. Aetna Cas. & Sur. Co.,* 466 N.W.2d 257, 261 (Iowa 1991) (describing waiver as the voluntary relinquishment of a known right).  Summit's representation that it has a manufacturing facility in Iowa, even if true, does not render Summit at home in this state for purposes of general jurisdiction.  *See Goodyear,* 564 U.S. at ___, 131 S. Ct at 2853–54, 180 L. Ed. 2d at 806 (equating at-home status with domicile).

Nor does the record support a finding of jurisdiction by estoppel based on the website statement.  Sioux Pharm bears the burden to prove equitable estoppel by a clear and convincing preponderance of the evidence.  *See Christy v. Miulli,* 692 N.W.2d 694, 702 (Iowa 2005).  Sioux Pharm must prove the following elements:

> "(1) The defendant has made a false representation or has concealed material facts; (2) the plaintiff lacks knowledge of the true facts; (3) the defendant intended the plaintiff to act

---

[3]Iowa abolished the special appearance in 1987.  *Antolik v. McMahon,* 744 N.W.2d 82, 83 (Iowa 2007).  Defendants may now preserve a defense of lack of personal jurisdiction by pleading it in the answer to the petition.  Iowa R. Civ. P. 1.421(1).

upon such representations; and (4) the plaintiff did in fact rely upon such representations to his prejudice."

*Id.* (quoting *Meier v. Alfa-Laval, Inc.*, 454 N.W.2d 576, 578–79 (1990)). Because Sioux Pharm did not rely on Summit's website statement, it cannot prove equitable estoppel to establish personal jurisdiction.

Sioux Pharm relies on *Turpin v. Mori Seiki Co.*, a case involving the exercise of *specific* jurisdiction. 56 F. Supp. 2d 121, 124 (D. Mass. 1999). There, the federal district court ruled that a Japanese manufacturer of an engine lathe was subject to personal jurisdiction in Massachusetts in a product-liability action. *Id.* at 124, 127–28. The plaintiff's employer had acquired the lathe made and sold by the Japanese defendant. *Id.* at 123–24. The plaintiff was injured when he was dragged into the lathe. *Id.* at 124. The workplace accident occurred in Massachusetts. *Id.* The lathe had been sold to plaintiff's employer through intermediaries, and the Japanese defendant moved to dismiss for lack of personal jurisdiction. *See id.* Plaintiff submitted evidence that the defendant's brochures represented it "has an overseas office in Boston." *Id.* at 127. In response, the defendant "contend[ed] that it does not actually have an overseas office in Boston and that whenever it made such a representation, it was merely designating an authorized dealer or the office of its wholly-owned subsidiary as an overseas office." *Id.* The district court concluded:

> The defendant can explain the facts, but it can't change them. Whether MS Ltd. was designating its own facility or the facility of an intermediary or subsidiary, the fact remains that it was explicitly holding itself out to the public as ready, willing and able to do business in Boston. It is difficult to imagine a more intentional or deliberate effort to "serve the market in the forum" of the Commonwealth.

*Id.*

The *Turpin* court relied in part on defendant's representations about the Boston office and on the fact the Massachusetts plaintiff was injured in the forum using defendant's product there. *See id.* at 127–28. *Turpin* is distinguishable for that reason. Here, Summit's website merely identified an Iowa facility as the source of its raw product it repackaged and sold elsewhere. By contrast, in *Turpin,* the office in Boston was admittedly open for the purpose of selling that defendant's products in the forum state. *See id.* at 127. And most importantly, the product-liability claims arose in the forum when plaintiff was hurt using defendant's product in that state. As the court said:

> The Commonwealth has a significant interest in obtaining jurisdiction over a defendant who causes tortious injury within its borders and in providing its citizens with a convenient forum in which to assert their claims. Massachusetts also has a strong policy interest in protecting its citizens from injuries caused by defective products, regardless of where those products were originally manufactured.

*Id.* at 127 (citation and internal quotation marks omitted). Thus, *Turpin* is a specific jurisdiction decision. We do not see *Turpin* as persuasive authority for *general* jurisdiction.

There are policy reasons against basing general jurisdiction solely on Internet activity.

> The fact that many companies have established virtual beachheads on the Internet and the fact that the Internet is now accessible from almost any point on the globe have created complex, new considerations in counting minimum contacts for purposes of determining personal jurisdiction.

*Butler v. Beer Across Am.*, 83 F. Supp. 2d 1261, 1267–68 (N.D. Ala. 2000). Given the economic importance of the Internet, courts should consider the ripple effects before subjecting nonresidents to general jurisdiction based solely on information posted on defendants' websites.

*See* David C. Tunick, *Passive Internet Websites and Personal Jurisdiction,* 28 Okla. City U.L. Rev. 739, 750–51 (2003) ("Would an Internet company stop doing business on the Internet . . . if the company knew that personal jurisdiction could attach in a distant forum even if no products were sold?"). Summit denies it intended to consent to jurisdiction in Iowa and contends that it placed the statement on its website merely to inform customers as to the Iowa source of its chondroitin sulfate. Commentators have expressed the concern that vague or expansive views of personal jurisdiction may subject new business owners to litigation in distant states through innocent misstatements on websites.

> "[B]ecause the Internet is bringing unsophisticated and poorly capitalized people into new situations where they are more likely than ever to make innocent mistakes and be sued for them, due process guarantees should be more robust in this new environment than they have been in more traditional commercial settings." Individual Web designers and bloggers can, and will, make mistakes concerning the content of their Web sites and electronic communications. With a vague standard for personal jurisdiction, suits for defamation, copyright infringement, and trademark infringement, as well as suits for relief in connection with other content-related claims, will be filed against these "unsophisticated and undercapitalized" designers.

Mark D. Standridge, *Passive Voice: The Unclear Standards for Establishing Personal Jurisdiction in New Mexico via the World Wide Web,* 35 N.M. L. Rev. 679, 697 (2005) (footnotes omitted). We share this concern.

Courts have relied on two tests to evaluate personal jurisdiction based on website activity, the *Calder* effects test and the *Zippo* sliding-scale approach. *See, e.g., Johnson v. Arden,* 614 F.3d 785, 796 (8th Cir. 2010) (citing *Calder v. Jones,* 465 U.S. 783, 789–90, 104 S. Ct. 1482, 1487, 79 L. Ed. 2d 804, 812 (1984), and *Zippo Mfg. Co. v. Zippo Dot Com, Inc.,* 952 F. Supp. 1119, 1124 (W.D. Pa. 1997)). We conclude both tests

may be used to determine the jurisdictional import of websites. Although *Calder*, a libel case, predated the growth of the public Internet, it established a useful framework to evaluate whether website communications give rise to specific jurisdiction in tort cases. Under the *Calder* effects test, "foreseeable effects from an intentional tort can occasionally support jurisdiction" when the primary effect of the tort is felt within the forum. *Shams*, 829 N.W.2d at 856. "[W]e look at the location of the tortious activities and the 'focal point' of the alleged tort." *Id.*

The *Zippo* approach recognizes a sliding scale from passive to interactive websites and is widely followed. *See* Thomas A. Dickerson et al., *Personal Jurisdiction and the Marketing of Goods and Services on the Internet*, 41 Hofstra L. Rev. 31, 41–42 & n.29 (Fall 2012) (surveying caselaw holding passive websites insufficient to support personal jurisdiction). The *Zippo* sliding-scale approach works as follows:

> [T]he likelihood that personal jurisdiction can be constitutionally exercised is *directly proportionate to the nature and quality of commercial activity that an entity conducts over the Internet.* This sliding scale is consistent with well developed personal jurisdiction principles. At one end of the spectrum are situations where a defendant clearly does business over the Internet. If the defendant enters into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the Internet, personal jurisdiction is proper. At the opposite end are situations where a defendant has simply posted information on an Internet Web site which is accessible to users in foreign jurisdictions. *A passive Web site that does little more than make information available to those who are interested in it is not grounds for the exercise [of] personal jurisdiction.* The middle ground is occupied by interactive Web sites where a user can exchange information with the host computer. In these cases, the exercise of jurisdiction is determined by examining the level of interactivity and commercial nature of the exchange of information that occurs on the Web site.

*Zippo*, 952 F. Supp. at 1124 (emphasis added) (citations omitted).

The *Zippo* sliding-scale approach is used to evaluate specific jurisdiction, but also can be considered along with other contacts in a general jurisdiction analysis, as the United States Court of Appeals for the Eighth Circuit has noted:

> [I]n a general jurisdiction case, . . . we consider the "nature and quality of the contacts" as well as the "quantity of the contacts." This is precisely why the *Zippo* test alone is insufficient for the general jurisdiction setting.
>
> . . . As a result, we will first apply the *Zippo* [quality] test and then also look at the quantity of those contacts with [forum] residents.

*Lakin v. Prudential Sec., Inc.,* 348 F.3d 704, 712 (8th Cir. 2003) (quoting *Bell Paper Box, Inc. v. U.S. Kids, Inc.,* 22 F.3d 816, 819 (8th Cir. 1994)). If sufficient contacts are found, the court must still subject the defendant's activities to the traditional test of "fair play and substantial justice," including the burden on the defendant, the interest of the forum state, and plaintiff's interest in relief. *Id.* at 713.

The erroneous statement on Summit's website does not establish general jurisdiction. The *Calder* effects test is used to analyze specific jurisdiction and is inapplicable to the analysis of general jurisdiction. Nor is the *Zippo* sliding-scale approach met here for general jurisdiction purposes. Summit's website merely gave the address of the facility where Summit acquires its chondroitin sulfate. Summit's website is not interactive and falls on the passive end of *Zippo*'s sliding-scale approach. Moreover, there is no evidence anyone in Iowa accessed Summit's website before this litigation. *See Johnson,* 614 F.3d at 797–98 (holding defendant's interactive website did not support personal jurisdiction without evidence defendant transacted business with forum residents through the website or that its website was "uniquely or expressly aimed" at the forum state). We conclude the district court erred in ruling

Summit's website statement alone subjected Summit to general jurisdiction in Iowa.

**B. General Jurisdiction Based on the Totality of Summit's Contacts with Iowa.** Sioux Pharm argues in the alternative that general jurisdiction exists based on Summit's long-standing contract to purchase chondroitin sulfate from Eagle Labs and the Iowa site visit by Summit's president. Sioux Pharm relies on Iowa Code section 617.3(2) (2011), which states:

> If a foreign corporation makes a contract with a resident of Iowa to be performed in whole or in part by either party in Iowa, or if such foreign corporation commits a tort in whole or in part in Iowa against a resident of Iowa, such acts shall be deemed to be doing business in Iowa by such foreign corporation for the purpose of service of process . . . .

Therefore, Sioux Pharm argues, Summit's contract with Eagle Labs represents continuous and systematic business contacts with Iowa and subjects Summit to general personal jurisdiction.

As noted above, general personal jurisdiction requires that the defendant's contacts "are sufficiently substantial or continuous and systematic." *Bankers Trust Co. v. Fidata Trust Co. NY*, 452 N.W.2d 411, 415 (Iowa 1990). The corporation must be "essentially at home in the forum State." *Goodyear*, 564 U.S. at ___, 131 S. Ct. at 2851, 180 L. Ed. 2d at 803 (holding tire manufacturer was not subject to general jurisdiction in North Carolina on claims arising from bus accident in France); *see also Daimler AG*, 571 U.S. at ___, 134 S. Ct. at 751, 187 L. Ed. 2d at 633 (holding German parent corporation was not subject to general jurisdiction in California on tort claims arising from Argentinian subsidiary's conduct aiding government security forces who kidnapped dissidents in so-called "Dirty War"). In *Helicopteros Nacionales de Colombia, S.A. v. Hall*, the United States Supreme Court concluded a

nonresident purchaser was not subject to general jurisdiction in Texas on claims arising out of a helicopter accident in Peru. 466 U.S. 408, 409–10, 416, 418, 104 S. Ct. 1868, 1870, 1873–74, 80 L. Ed. 2d 404, 408–09, 412–14 (1984) (holding that general jurisdiction did not exist when the Colombian defendant negotiated a contract in Texas, accepted checks from Texas, and sent employees to purchase helicopters and attend training sessions in Texas). Similarly, in *Bankers Trust,* we determined that personal jurisdiction over Fidata was lacking even though it sent its employees to Iowa to train Bankers Trust employees on multiple occasions and did business with Bankers Trust annually. 452 N.W.2d at 416. In these cases, general personal jurisdiction was lacking over the nonresident despite multiple in-person visits to the forum and ongoing contracts with the resident plaintiff.

We rejected a similar jurisdictional argument based on Iowa Code section 617.3 in *Rath Packing Co. v. Intercont'l Meat Traders, Inc.*, holding no personal jurisdiction existed over a nonresident purchaser despite its contract with an Iowa seller. 181 N.W.2d 184, 186–87 (Iowa 1970). In *Rath Packing Co.,* we found it significant that the nonresident defendant was a purchaser rather than a seller. *Id.* at 188. We concluded an out-of-state purchaser does not purposefully avail itself of the privilege of conducting business in Iowa the same way a seller does. *Id.* "The state also has an interest in protecting its citizens from damages sustained from a product brought into the state which is not present when a resident seller seeks to collect for a product shipped out of state." *Id.* at 189. " '[A] contract *alone* cannot automatically establish sufficient contacts.' " *Ross v. First Sav. Bank of Arlington*, 675 N.W.2d 812, 816 (Iowa 2004) (quoting *Hager v. Doubletree*, 440 N.W.2d 603, 607 (Iowa

1989)). Rather, the defendant must "purposely avail[] itself of the benefits of dealing with Iowa residents." *Id.* at 819.

We conclude the totality of Summit's contacts with Iowa falls short of establishing that it is "essentially at home in the forum State." *Goodyear*, 564 U.S. at ___, 131 S. Ct. at 2851, 180 L. Ed. 2d at 803. Accordingly, the district court erred in ruling that Summit was subject to general jurisdiction in Iowa.

**C. Specific Jurisdiction Based on Summit's Alleged Unfair Competition.**[4] We now turn to Sioux Pharm's alternative argument raised in district court and on appeal that Summit's Iowa contacts are sufficient to establish specific jurisdiction in this lawsuit, alleging unfair competition. Specific jurisdiction may be based on " 'single or occasional acts . . . with respect to suits relating to that in-state activity.' " *Daimler AG*, 571 U.S. at ___, 134 S. Ct. at 754, 187 L. Ed. 2d at 633 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 318, 66 S. Ct. 154, 159, 90 L. Ed. 95, 103 (1945)). Thus, we have upheld the exercise of specific jurisdiction over a nonresident corporation based on a single, harassing phone call to an Iowan in a lawsuit alleging that phone call violated our consumer credit code. *Norton v. Local Loan*, 251 N.W.2d 520, 522 (Iowa

---

[4]In district court, Sioux Pharm argued that the court could exercise personal jurisdiction on a theory of civil conspiracy to impute Eagle Labs' Iowa contacts to Summit. *See Remmes v. Int'l Flavors & Fragrances, Inc.*, 389 F. Supp. 2d 1080, 1093–95 (N.D. Iowa 2005) (noting split in authorities and predicting our court "would recognize civil conspiracy as a basis to support the exercise of in personam jurisdiction"). *But see Brown v. Kerkhoff*, 504 F. Supp. 2d 464, 518 (S.D. Iowa 2007) (surveying authorities to reject civil liability as a basis for establishing personal jurisdiction). We have never decided whether to adopt a civil conspiracy theory of personal jurisdiction and do not reach that question today because the district court dismissed the civil conspiracy claims against all defendants, including Summit, based on lack of evidence of an overt act or agreement to conspire. Sioux Pharm did not cross-appeal the ruling dismissing the conspiracy claims and does not argue in this appeal that Eagle Labs' Iowa contacts may be imputed to Summit under a civil conspiracy theory of personal jurisdiction.

1977). More recently, in *Shams*, we held specific jurisdiction could be asserted over a nonresident who by mail misappropriated money from an Iowa bank account set up to benefit children, two of whom lived here, even though the defendant lacked any other contacts with this state. 829 N.W.2d at 859–60.

Two criteria must be met to subject a nonresident defendant to specific jurisdiction: (1) the defendant must purposefully direct its activities at residents of the forum, and (2) the litigation results from alleged injuries that "arise out of or relate to" those activities. *Id.* at 856 (internal quotation marks omitted). "If sufficient minimum contacts exist, the court must then determine whether the assertion of personal jurisdiction would comport with fair play and substantial justice." *Id.* at 857 (internal quotation marks omitted).

We conclude the unfair-competition claims Sioux Pharm alleges against Summit are related to Summit's Iowa contacts, and those contacts in their totality are sufficient to subject it to specific jurisdiction here. Sioux Pharm alleges Summit competes unfairly in the sale of chondroitin sulfate by distributing diluted product that is mislabeled as at least ninety percent pure, in violation of § 1125(a) of the Lanham Act, as well as Iowa common law. The source of Summit's raw product is codefendant Eagle Labs in Sioux Center, shipped monthly from Iowa to Summit under their long-standing supply contract. For its own competitive marketing purposes, Summit touted the Iowa source of its product on its website, listing the Sioux Center manufacturing facility as its own. Summit's website statement, by holding itself out as operating its own Iowa manufacturing facility, supports specific jurisdiction notwithstanding that Eagle Labs actually owns the Iowa location. *See Turpin,* 56 F. Supp. 2d at 127 (holding that a brochure claiming Boston

office supported finding of specific jurisdiction even though another entity operated that office). Summit falsely touted Iowa roots to enhance its sales. Subjecting Summit to Iowa jurisdiction comports with fair play and substantial justice. As the district court concluded, "Any party that claims to operate within a forum state should expect to be haled into court there, whether or not the claims are true."

Summit sold one shipment of the product to Sioux Pharm in Iowa. Although that sale was arranged by Sioux Pharm, it shows Summit's willingness to sell the allegedly mislabeled product anywhere, including in this forum. Courts have noted that a single sale in the forum may be sufficient to establish specific jurisdiction over the seller in a Lanham Act case. *See Chloé v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 170 (2d Cir. 2010) (surveying caselaw and noting defendant's "single act of shipping a counterfeit Chloé bag might well be sufficient, by itself, to subject him to the jurisdiction of a New York court"); *Furminator, Inc. v. Wahba*, No. 4:10CV01941AGF, 2011 WL 3847390, at *5–6 (E.D. Mo. Aug. 29, 2011) (finding specific jurisdiction over defendants based on their sale of counterfeit goods over eBay.com and Amazon.com to the forum state plaintiff who owned the trademark). The United States Court of Appeals for the Second Circuit in *Chloé* held the defendant was subject to specific jurisdiction based on his sale to an employee of the plaintiff's law firm as well as at least fifty additional sales to other New Yorkers. *Chloé*, 616 F.3d at 165–67. Like the Second Circuit, we regard Summit's sale to Sioux Pharm in Iowa as a factor supporting specific jurisdiction. We need not and do not decide whether a single sale to the plaintiff by itself could support specific jurisdiction in an unfair-competition action.

Sioux Pharm alleges intentional tort claims against Summit. Under the *Calder* effects test, we may consider the effects on Sioux

Pharm in Iowa of Summit's sales in other states.  *See Shams*, 829 N.W.2d at 856.  The *Calder* effects test applies if

> (1) the defendant's acts were intentional; (2) those actions were uniquely or expressly aimed at the forum state; and (3) the brunt of the harm was suffered in the forum state, and the defendant knew the harm was likely to be suffered there.

*Id.* (internal quotation marks omitted).  We apply the *Calder* effects test narrowly "as an additional factor to consider when evaluating a defendant's relevant contacts with the forum state."  *Johnson*, 614 F.3d at 796–97.  "[A]bsent additional contacts, mere effects in the forum state are insufficient to confer personal jurisdiction."  *Id.* at 797.  The foreseeability of causing injury in the forum alone is not enough to establish jurisdiction, but it is a relevant factor.  *Shams*, 829 N.W.2d at 855–56.

The record shows Sioux Pharm and Eagle Labs are the only domestic producers of chrondroitin sulfate.  Thus, it is reasonable to infer Summit was aware its allegedly unfair competition would harm Sioux Pharm in Iowa.  *See CollegeSource, Inc. v AcademyOne, Inc.*, 653 F.3d 1066, 1078 (9th Cir. 2011) (rejecting as "implausible" defendant's claim it was unaware plaintiff's principle place of business was in the forum state because they "were direct competitors in a relatively small industry").

Summit's allegedly unfair competition harmed the Iowa plaintiff, Sioux Pharm, in this state under the *Calder* effects test.  *See id.* at 1079 ("We have repeatedly held that a corporation incurs economic loss, for jurisdictional purposes, in the forum of its principal place of business."); *Dakota Indus., Inc. v. Dakota Sportswear, Inc.,* 946 F.2d 1384, 1388–89 (8th Cir. 1991) (holding economic injury in trademark-infringement case was suffered in forum state where plaintiff had its principal place of

business and offending product was sold); *Mor-Dall Enters., Inc.*, 16 F. Supp. 3d at 881–82 (noting Lanham Act violations cause economic harm to the plaintiff in its home state).

Iowa has an interest in providing a forum for an " 'effective means of redress for its residents.' " *Ostrem*, 841 N.W.2d at 903 (quoting *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 223, 78 S. Ct. 199, 201, 2 L. Ed. 2d 223, 226 (1957)); *see also Shams*, 829 N.W.2d at 860 ("Iowa's interest in adjudicating a dispute concerning a tort that [oc]curred within its borders and [plaintiff's] interest in obtaining convenient relief outweigh any inconvenience to [defendant].").

We hold the totality of Summit's contacts with Iowa, considered in light of the *Calder* effects test, are sufficient to establish specific jurisdiction here. We therefore affirm the order denying Summit's motion to dismiss.

### IV. Disposition.

For the foregoing reasons, we hold Summit is not subject to general jurisdiction in Iowa, but specific jurisdiction has been established over Summit in this unfair-competition action. We therefore affirm on that alternative ground the district court's ruling denying Summit's motion to dismiss for lack of personal jurisdiction. We remand the case to allow Sioux Pharm's claims against Summit to proceed.

**AFFIRMED.**

All justices concur except Hecht, J., who takes no part.