# United States Court of Appeals
## For the Eighth Circuit

_____

No. 13-2585

_____

Fastpath, Inc.

*Plaintiff - Appellant*

v.

Arbela Technologies Corporation

*Defendant - Appellee*

_____

Appeal from United States District Court
for the Southern District of Iowa - Des Moines

_____

Submitted: April 17, 2014
Filed: July 25, 2014

_____

Before LOKEN and MURPHY, Circuit Judges, and PERRY, District Judge.[1]

_____

PERRY, District Judge.

Fastpath, Inc. sued Arbela Technologies Corp. for breach of a mutual confidentiality agreement. Arbela moved to dismiss for lack of personal

_____

[1]The Honorable Catherine Perry, Chief Judge, United States District Court for the Eastern District of Missouri, sitting by designation.

jurisdiction. The district court[2] dismissed. Fastpath appeals. Having jurisdiction under 28 U.S.C. § 1291, we affirm.

I

Fastpath, an Iowa corporation, develops and markets security software. Arbela is a California services and software corporation offering security software. Arbela has no office or employees in Iowa and conducts no business there.

After an Arbela employee saw a Fastpath display at a trade show in Atlanta, Georgia in 2010, Arbela emailed Fastpath in Iowa about the possibility of pursuing potential business opportunities together. In October of 2011, Arbela's President and CEO Nima Bakhtiary visited Fastpath's booth at a trade show in Las Vegas, Nevada and inquired about some of its software tools. In March of 2012, Bakhtiary and Fastpath's Vice President Andy Snook were both guest speakers at a conference in Houston, Texas. After the conference, they discussed a potential partnership, and on May 7, 2012, Bakhtiary emailed Snook and proposed a conference call to discuss each company's business capabilities. Snook agreed, and he and Bakhtiary exchanged emails to schedule the conference call.

The call took place on May 21, 2012, between Snook, who was in Iowa, and Bakhiarty, who was not, and lasted about 30 minutes. During the call, the parties agreed to a "show and tell" webinar. Snook then emailed Arbela to schedule the webinar. Attached to Snook's email was a proposed confidentiality agreement with a covenant not to compete. Arbela requested that the covenant be made mutual. Fastpath agreed, made the proposed changes to the agreement, and emailed it to Arbela. Arbela executed the agreement ("Agreement"), and then Fastpath signed it in Iowa.

---

[2]The Honorable Robert W. Pratt, United States District Judge for the Southern District of Iowa.

The Agreement recites that its purpose is to facilitate the exchange of information "for the purpose of evaluating and negotiating a possible investment, acquisition, divestiture, partnership and/or joint venture transaction between" Arbela and Fastpath. The Agreement contains a confidentiality provision and a three-year covenant not to compete that is unlimited in geographic scope. It also provides that it "shall be construed and interpreted in accordance with the laws of the state of Iowa, without giving effect to its conflict of law provisions." The Agreement does not contain a forum selection clause.

Instead of the webinar, Arbela attended a sales presentation made by Fastpath in Seattle, Washington to prospective customers. Arbela then emailed Fastpath about its potential client Hexcel. Fastpath discovered that Arbela was marketing a new product to Hexcel as an alternative to one of Fastpath's products.

On February 20, 2013, Fastpath's sales director participated in a conference call with Arbela at Arbela's request. The next day, Fastpath watched from Iowa an interactive, public webinar presentation hosted by Arbela. During this webinar, Arbela discussed a product that Fastpath claims is in direct competition with one of its products, allegedly in breach of the Agreement. The parties never did any business together, and Arbela denies that any confidential information was ever exchanged under the Agreement.

Fastpath sued Arbela in Iowa state court for allegedly breaching the Agreement's covenant not to compete. Arbela removed the action to federal district court and moved to dismiss for lack of personal jurisdiction. The district court granted the motion and dismissed the action, concluding that it lacked personal jurisdiction over Arbela.

## II

"We review personal-jurisdiction issues de novo." *KV Pharm. Co. v. J. Uriach & CIA, S.A*, 648 F.3d 588, 591(8th Cir. 2011). When personal jurisdiction is challenged by a defendant, the plaintiff bears the burden to show that jurisdiction exists. *KV Pharm.*, 648 F.3d at 591–92; *Viasystems, Inc. v. EBM–Pabst St Georgen GMBH & Co., KG*, 646 F.3d 589, 592 (8th Cir. 2011); *Miller v. Nippon Carbon Co., Ltd.*, 528 F.3d 1087, 1090 (8th Cir. 2008); *Dever v. Hentzen Coatings,* 380 F.3d 1070, 1072 (8th Cir. 2004); *Epps v. Stewart Info. Servs. Corp.*, 327 F.3d 642, 647 (8th Cir. 2003). To successfully survive a motion to dismiss challenging personal jurisdiction, a plaintiff must make a prima facie showing of personal jurisdiction over the challenging defendant. *KV Pharm.*, 648 F.3d at 591 ("To survive a motion to dismiss for lack of personal jurisdiction, a plaintiff must make a prima facie showing that personal jurisdiction exists . . . ."); *Steinbuch v. Cutler*, 518 F.3d 580, 585 (8th Cir. 2008) ("To survive a motion to dismiss, the plaintiff must state sufficient facts in the complaint to support a reasonable inference that defendants may be subjected to jurisdiction in the forum state."); *Epps,* 327 F.3d at 647; *Clune v. Alimak AB*, 233 F.3d 538, 541 (8th Cir. 2000). A plaintiff's prima facie showing "must be tested, not by the pleadings alone, but by affidavits and exhibits supporting or opposing the motion." *KV Pharm.*, 648 F.3d at 592 (quoting *Dever*, 380 F.3d at 1072–73). Where no hearing is held on the motion, we must view the evidence in a light most favorable to the plaintiff and resolve factual conflicts in the plaintiff's favor; however, the party seeking to establish the court's personal jurisdiction carries the burden of proof and that burden does not shift to the party challenging jurisdiction. *Epps*, 327 F.3d at 647.

"Personal jurisdiction can be specific or general." *Viasystems*, 646 F.3d at 593. Fastpath argues only that Arbela is subject to specific jurisdiction in Iowa. "Specific jurisdiction refers to jurisdiction over causes of action arising from or related to a defendant's actions within the forum state . . . ." *Miller*, 528 F.3d at 1091 (quoting *Bell Paper Box, Inc. v. U.S. Kids, Inc.*, 22 F.3d 816, 819 (8th Cir. 1994)) (internal

quotation marks omitted). "Specific personal jurisdiction can be exercised by a federal court in a diversity suit only if authorized by the forum state's long-arm statute and permitted by the Due Process Clause of the Fourteenth Amendment." *Dairy Farmers of America, Inc. v. Bassett & Walker Int'l, Inc.*, 702 F.3d 472, 475 (8th Cir. 2012) (quoting *Viasystems*, 646 F.3d at 593). "Because Iowa's long-arm statute 'expands Iowa's jurisdictional reach to the widest due process parameters allowed by the United States Constitution,' our inquiry is limited to whether the exercise of personal jurisdiction comports with due process." *Wells Dairy, Inc. v. Food Movers Int'l, Inc.*, 607 F.3d 515, 518 (8th Cir. 2010) (quoting *Hammond v. Florida Asset Fin. Corp.*, 695 N.W.2d 1, 5 (Iowa 2005)).

Due process requires that a non-resident have minimum contacts with the forum state such that the maintenance of the lawsuit does not offend traditional notions of fair play and substantial justice. *World–Wide Volkswagen v. Woodson*, 444 U.S. 286, 291–92, 100 S. Ct. 559, 564–65, 62 L. Ed. 2d 490 (1980); *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S. Ct. 154, 158, 90 L. Ed. 95 (1945); *Guinness Import Co. v. Mark VII Distribs., Inc.*, 153 F.3d 607, 614 (8th Cir. 1998). Minimum contacts is based on the notion that "those who live or operate primarily outside a State have a due process right not to be subjected to judgment in its courts as a general matter." *J. McIntyre Mach., Ltd. v. Nicastro*, -- U.S. --, 131 S. Ct. 2780, 2787, 180 L. Ed. 2d 765 (2011). A defendant's contacts with the forum state must be sufficient so that a non-resident defendant should reasonably anticipate being haled into court there. *World–Wide Volkswagen*, 444 U.S. at 297, 100 S. Ct. at 567; *Stanton v. St. Jude Med., Inc.*, 340 F.3d 690, 694 (8th Cir. 2003); *Epps*, 327 F.3d at 648. Sufficient minimum contacts requires some act by which the defendant "purposely avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *J. McIntyre*, 131 S. Ct. at 2787 (quoting *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S. Ct. 1228, 1240, 2 L. Ed. 2d 1283 (1958)); see *Romak USA, Inc. v. Rich*, 384 F.3d 979, 984 (8th Cir. 2004).

The "purposeful availment requirement ensures that a defendant will not be haled into a jurisdiction solely as the result of random, fortuitous, or attenuated contacts or of the unilateral activity of another party or a third person." *Stanton*, 340 F.3d at 693–94 (quoting *Burger King v. Rudzewicz*, 471 U.S. 462, 475, 105 S. Ct. 2174, 2183, 85 L. Ed. 2d 528 (1985)). "For a State to exercise jurisdiction consistent with due process, the defendant's suit-related conduct must create a substantial connection with the forum State." *Walden v. Fiore*, -- U.S. --, 134 S. Ct 1115, 1121, 188 L. Ed. 2d 12 (2014). This means that "the relationship must arise out of contacts that the defendant *himself* creates with the forum State." *Id.* at 1122 (quoting *Burger King*, 471 U.S. at 475, 105 S. Ct. at 2183–84). Contacts between the plaintiff and the forum State do not satisfy this inquiry. *Id.* "Jurisdiction is proper, however, where the contacts proximately result from actions by the defendant himself that create a substantial connection with the forum state." *Stanton*, 340 F.3d at 694 (quoting *Burger King*, 471 U.S. at 475, 105 S. Ct. at 2183–84).

We have established a five-factor test to determine the sufficiency of a non-resident defendant's contacts with the forum state. *Dever*, 380 F.3d at 1073. The five factors are: 1) the nature and quality of contacts with the forum state; 2) the quantity of the contacts; 3) the relation of the cause of action to the contacts; 4) the interest of the forum state in providing a forum for its residents; and 5) convenience of the parties. *Id.* at 1073–74 (quoting *Burlington Indus., Inc. v. Maples Indus., Inc.*, 973 F.3d 1100, 1102 (8th Cir. 1996)). We give significant weight to the first three factors. *Id.* at 1074.

III

"Before addressing the five factors set forth above, we first turn to the role of contracts in the personal-jurisdiction analysis." *KV Pharm.*, 648 F.3d at 593. "A contract between a plaintiff and an out-of-state defendant is not sufficient in and of

itself to establish personal jurisdiction over the defendant in the plaintiff's forum state." *Id.* (citing *Burger King*, 471 U.S. at 478–79, 105 S. Ct. at 2185). "Personal jurisdiction, moreover, does not turn on mechanical tests or on conceptualistic theories of the place of contracting or of performance." *Id.* (quoting *Burger King*, 471 U.S. at 478–79, 105 S. Ct. at 2185). Instead courts should consider the terms of the contract and its contemplated future consequences in determining whether personal jurisdiction over a non-resident defendant exists. *Id.* at 594 (citing *Burger King*, 471 U.S. at 478–79, 105 S. Ct. at 2185).

Fastpath contends that the Iowa choice-of-law provision in the Agreement is sufficient to establish personal jurisdiction over Arbela in Iowa. The district court properly rejected the choice-of-law provision as a determinative factor in establishing jurisdiction as "choice-of-law provisions specifying that the forum state's laws govern are insufficient on their own to confer personal jurisdiction . . . ." *K-V Pharm.*, 648 F.3d at 594. However, it can "provide further evidence of a defendant's deliberate affiliation with the forum State and the reasonable foreseeability of possible litigation there." *Id.* (quoting *Burger King*, 471 U.S. at 482, 105 S. Ct. at 2187). Here, Fastpath argues that Arbela must have intended for the Agreement to be enforced in Iowa because California, Arbela's home state and allegedly "the only other possible forum for this lawsuit," prohibits covenants not to compete. The parties disagree about whether the covenant not to compete is actually enforceable under California law. We need not decide this issue as the Agreement did not require performance or contemplate future consequences specifically in Iowa.

The Agreement is not for the actual development or sale of any products in Iowa or elsewhere; instead, it simply permits the parties to exchange confidential information for the purpose of discussing potential future business deals. Moreover, the Agreement is silent as to where the contemplated sharing of information was to take place. To the extent any information was shared, that sharing occurred in Seattle, Washington, not Iowa, when Arbela attended Fastpath's sales presentation.

- 7 -

The covenant itself is not geographically limited in scope to Iowa, but rather calls for a world-wide prohibition on the developing, marketing, sale, and licensing of competitive products. The evidence bears out the nationwide scope of the parties' businesses, as they met in Atlanta, Las Vegas, Houston, and Seattle, but never in Iowa. Although any future development of software products by Fastpath might have taken place in Iowa, this factor is not relevant in our analysis as the Agreement never led to a deal between the parties. Nor is it persuasive that Arbela requested the covenant be made mutual in the absence of any evidence that the parties specifically negotiated the choice-of-law provision. *See Wessels, Arnold & Henderson v. Nat'l Med. Waste, Inc.,* 65 F.3d 1427, 1434 (8th Cir. 1995) (finding choice-of-law provision "an important factor" in establishing jurisdiction where it was specifically negotiated by the parties and defendant traveled to forum state twice). Arbela has no employees or offices in Iowa, never traveled to Iowa for this Agreement, and allegedly breached the covenant outside Iowa. That an Iowa company felt its breach does not mean that an Iowa court has jurisdiction over the non-resident defendant consistent with due process. We simply cannot evince an intent to do business in Iowa on the part of Arbela from this choice-of-law provision. *See K-V Pharm.*, 648 F.3d at 594–95 (choice-of-law provision supported finding of jurisdiction where defendant also traveled to forum state to negotiate contract, sent money to forum, exchanged numerous letters, emails, and phone calls with plaintiff in forum state over many years, and contract specifically contemplated substantial future activity in forum state).

Fastpath also argues that personal jurisdiction over Arbela is supported by Arbela's contacts with Iowa, which allegedly include "aggressively pursuing" a business relationship with an Iowa company, sending emails to Iowa, two telephone calls to Iowa, a public webinar viewed by Fastpath in Iowa, obtaining access to information about software products Fastpath had developed in Iowa, and "executing an agreement which imposed continuing obligations on Fastpath in Iowa." As discussed above, the Agreement did not impose any obligations on Fastpath

specifically in Iowa because the covenant not to compete was not so geographically limited. Moreover, Fastpath's contacts with Iowa cannot form the basis of personal jurisdiction over Arbela. "We have consistently rejected attempts to satisfy the defendant-focused 'minimum contacts' inquiry by demonstrating contacts between the plaintiff (or third parties) and the forum State." *Walden*, 134 S. Ct. at 1122. Even if Arbela acquired information about products developed in Iowa, this fact would not establish personal jurisdiction over Arbela in this case. "Put simply, however significant the plaintiff's contacts with the forum may be, those contacts cannot be decisive in determining whether the defendant's due process rights are violated." *Id.* (internal quotation marks and citation omitted).

The same is true for Arbela's alleged "aggressive pursuit" of a business relationship with Fastpath, as "our minimum contacts analysis looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Id.* (internal quotation marks and citation omitted). Here any "pursuit" of Fastpath took place outside Iowa. Arbela and Fastpath first made contact in Atlanta, Georgia. Bakhtiary then visited Fastpath's booth at a trade show in Las Vegas, Nevada, and Bakhtiary and Snook later discussed a potential partnership at a conference in Houston, Texas. After the Agreement was signed, Arbela attended a presentation put on by Fastpath in Seattle, Washington, where Arbela allegedly acquired information about Fastpath's competitive products. None of these in-person solicitations or meetings took place in Iowa. Fastpath makes much of the fact that Arbela knew it was an Iowa corporation when these discussions were ongoing, but "[t]his approach to the 'minimum contacts' analysis impermissibly allows a plaintiff's contacts with the defendant and the forum to drive the jurisdictional analysis." *Id.* at 1125.

The United States Supreme Court's recent decision in *Walden v. Fiore*, -- U.S. --, 134 S. Ct. 1115, 188 L. Ed. 2d 12 (2014), is instructive. In that case, plaintiffs brought a tort action against the defendant Drug Enforcement Administration agent

- 9 -

in their home state of Nevada after the agent seized their funds in Atlanta. 134 S. Ct. at 1119–20. The Supreme Court held that Nevada lacked personal jurisdiction over the agent, despite his knowledge that plaintiffs were Nevada residents, because none of his activities took place in Nevada. *Id.* at 1124. "[The agent's] actions in Georgia did not create sufficient contacts with Nevada simply because he allegedly directed his conduct at plaintiffs whom he knew had Nevada connections." *Id.* at 1125.[3]

Even if Arbela solicited the Agreement knowing that Fastpath was an Iowa corporation, that knowledge cannot create minimum contacts with Iowa because "the plaintiff cannot be the only link between the defendant and the forum." *Walden,* 143 S.Ct. at 1125. To find otherwise would "improperly attribute[] a plaintiff's forum connections to the defendant and make[] those connections decisive in the jurisdictional analysis." *Id.* (internal quotation marks omitted). As for Arbela's forum contacts, Arbela directed some emails and phone calls to Fastpath in Iowa, but the district court correctly determined that this activity was insufficient to establish personal jurisdiction. *See Viasystems*, 646 F.3d at 594 (no personal jurisdiction where non-resident defendant's contacts consisted of scattered emails, phone calls, and a wire-transfer to forum state); *Digi-Tel Holdings, Inc. v. Proteq Telecomms. (PTE), Ltd.*, 89 F.3d 519, 523 (8th Cir. 1996) (affirming district court's dismissal for lack of personal jurisdiction where non-resident defendant's contacts with forum state consisted of numerous faxes and letters, several phone calls in connection with the contract in dispute, and choice-of-law provision). "Although letters and faxes may be used to support the exercise of personal jurisdiction, they do not themselves establish jurisdiction." *Id.* Like the contacts in *Viasystems* and *Digi-tel,* the emails and phone calls here do not create a "substantial connection" to Iowa sufficient to

[3]These well-established jurisdictional principles apply with equal force in this breach of contract case. *See Walden*, 124 S. Ct. at 1121–23 (discussing these principles and then concluding that "[t]hese same principles apply when intentional torts are involved.").

subject Arbela to personal jurisdiction in the state. *See id.*[4] While Arbela's website and public webinar may have been accessed by Fastpath in Iowa and may have reached potential Iowa customers, nothing suggests that Arbela's marketing efforts were actively, exclusively, or even predominantly targeted at Iowa customers. Instead, Arbela's contacts with Iowa were merely "incidental" and did "not constitute a deliberate and substantial connection with the state such that [Arbela] could reasonably anticipate being haled into court there." *Viasystems,* 646 F.3d at 594 (quoting *Burger King*, 471 U.S. at 474–75, 105 S. Ct. at 2183).

Although Fastpath relies heavily on *Wells Dairy, Inc. v. Food Movers Int'l, Inc.*, 607 F.3d 515 (8th Cir. 2010), that case is easily distinguishable. Unlike the present case, in *Wells Dairy* the defendant's relationship with plaintiff contemplated consequences specifically in Iowa—the parties contracted for the Iowa corporation to deliver product in Iowa to defendant's Iowa customers. *Id.* at 517. Iowa was central to the parties' bargain. Here there is no similar connection to Iowa. The Agreement is silent as to where any exchange of information was to take place, and the covenant not to compete is not limited to or even focused on Iowa. Iowa's connection to the Agreement is simply incidental at best.

The district court correctly concluded that it could not exercise personal jurisdiction over Arbela consistent with due process. The nature, quality, and

---

[4]Fastpath argues it is significant that Iowa is the place of contract formation. In *Digi-Tel*, we rejected the argument that the district court had personal jurisdiction over the non-resident defendant because the contract provided that it was deemed executed in the forum state by stating, "We merely observe that the United States Supreme Court long ago rejected the notion that personal jurisdiction might turn on mechanical tests or on conceptualistic theories of the place of contracting or of performance." 89 F.3d at 523 n.5 (quoting *Burger King*, 471 U.S. at 478, 105 S. Ct. at 2185). Thus, even if the contract had been formed in Iowa—which we need not decide —that would not vest Iowa courts with personal jurisdiction over Arbela in this case.

quantity of Arbela's contacts with Iowa are not sufficient to demonstrate purposeful availment of the forum state. While Iowa has an interest in providing its residents with a forum, that interest "cannot make up for the absence of minimum contacts." *Digi-Tel*, 89 F.3d at 525. The same is true of the last factor—party convenience. That Iowa may be a more convenient forum for Fastpath does not mean that Iowa courts have personal jurisdiction over Arbela.

Arbela's solicitation of the Agreement took place outside Iowa, the Agreement does not specifically contemplate the exchange of information in Iowa, no information exchange took place in Iowa, the covenant not to compete is not limited to or focused on Iowa, and any alleged breach of the Agreement occurred outside Iowa. The Due Process Clause does not permit the exercise of jurisdiction over Arbela in Iowa on this Agreement. *See Dairy Farmers of Am., Inc. v. Bassett & Walker Int'l, Inc.,* 702 F.3d 472, 478–79 (8th Cir. 2012) (finding no personal jurisdiction over defendant in Missouri where no prior negotiations took place in Missouri and contract did not specifically contemplate coordination and processing of orders in Missouri; because contract was for a Colorado product delivered to Mexico and paid for in Illinois, plaintiff's administration of contract in Missouri by virtue of its location there was insufficient to confer personal jurisdiction in Missouri).

IV

The judgment of the district court is affirmed.

_____