United States Court of Appeals

For the Eighth Circuit

_____

No. 19-1391

_____

Henry Law Firm

*Plaintiff - Appellee*

v.

Cuker Interactive, LLC

*Defendant*

Adel Atalla

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Western District of Arkansas - Fayetteville

_____

Submitted: September 25, 2019
Filed: February 12, 2020

_____

Before SMITH, Chief Judge, BEAM and ERICKSON, Circuit Judges.

_____

ERICKSON, Circuit Judge.

Cuker Interactive ("Cuker") retained the Henry Law Firm ("the firm") to represent it in a diversity action against Walmart, Inc. ("Walmart") in the Western District of Arkansas. When Cuker failed to pay the firm's invoices, the firm commenced this action seeking payment from Cuker and its president, Adel Atalla, who had provided a personal guarantee for the legal services agreement between Cuker and the firm. Atalla moved to dismiss or, in the alternative, for summary judgment. The firm resisted Atalla's motions and cross-moved for summary judgment. The district court[1] denied Atalla's motions for dismissal and for summary judgment and granted summary judgment in favor of the firm. Atalla appeals. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

## I.     Background

Cuker[2] is a California-based designer of websites that retained the firm to represent it in litigation that Walmart commenced in 2014. In 2016, Cuker's relationship with its original lawyers had broken down, at least in part because of payment issues. Cuker's soon-to-be-former attorney introduced Adel Atalla to Mark Henry, the sole proprietor and manager of the Henry Law Firm. The firm has its principal place of business in Arkansas. Atalla is Cuker's president and resides in California.

At the time that Cuker entered into negotiations with the firm, all parties were aware that Cuker had cash flow difficulties and had fallen behind in its payment of

---

[1]The Honorable Timothy L. Brooks, United States District Judge for the Western District of Arkansas.

[2]Cuker voluntarily filed a chapter 11 bankruptcy petition in December 2018 before its response to the firm's summary judgment motion was due. The district court deferred ruling on the firm's motion against Cuker until the bankruptcy stay is lifted. Accordingly, Cuker does not participate in this appeal.

legal bills. Under these circumstances, the firm was only willing to accept the retainer if Atalla personally guaranteed the contract. Atalla and Henry negotiated the terms of the agreement through calls and emails, and on March 9, 2016, Atalla signed the legal services agreement twice: once in his capacity as "president" and once in his capacity as "personal guarantor." The firm accepted the retainer, and on March 21, 2016, Henry noted his appearance as lead counsel in the Walmart litigation.

Under the terms of the March 9, 2016 contract, Cuker and Atalla as "guarantor" are "together" the "Client." The contract provided for an initial retainer of $50,000 with monthly deposits of $25,000. It further provided that whenever the trust account balance fell below $30,000, Cuker would make a deposit to raise the balance to $50,000.

During the course of representation Atalla mainly interacted with the firm from his home state of California. He met with Henry and other attorneys in California, and he communicated with Henry via telephone and email. While Atalla did not attend the Walmart trial, he traveled to Arkansas three times in connection with the firm's work on the Walmart case. He met with Henry at the firm for a two-hour status update on the Walmart case. Atalla attended a deposition of a Walmart employee conducted at a different Arkansas law firm. And he attended a court-mandated settlement conference.

Cuker fell behind in its payments to the firm as the case neared trial. Henry continued his representation of Cuker, and the case against Walmart proceeded to trial in April 2017. At the conclusion of the trial, the jury returned a verdict in favor of Cuker and awarded damages in the amount of $12,438,665. Cuker and Walmart stipulated to reduce the jury award to $10,197,065. The district court partially granted Walmart's Rule 50 motion, reduced Cuker's damages to $745,021, and awarded $2,174,073.11 in attorney fees, costs, and sanctions.

During the next year Atalla repeatedly assured the firm that the outstanding invoices would be "taken care of." On April 5, 2018, Henry sent an email to Atalla and Cuker's CEO demanding an $80,000 payment and monthly deposits of $30,000 thereafter. At this point the firm believed that Cuker was near bankruptcy and wanted to proceed against Atalla in his individual capacity as guarantor. Atalla disputed the demand and claimed that Cuker had breached its contractual obligations. When Henry requested that Atalla refrain from communicating with him because he represented Cuker and not Atalla, Atalla responded by saying he had contacted the firm in his capacity as "an individual (the co-signer of the agreement)" and that he had been personally harmed by Cuker's alleged breach. On April 13, 2018, the firm filed this diversity suit against Cuker and Atalla to enforce payment of $1,200,376.52.

The district court denied Atalla's motions to dismiss for lack of personal jurisdiction and for summary judgment. It granted, in part, the firm's motion for summary judgment, concluding that Atalla had sufficient minimum contacts with Arkansas for personal jurisdiction to be proper and that Atalla's personal guaranty was enforceable. The district court also judicially estopped Atalla's collateral attack on the reasonableness of the attorney fee award. Atalla appeals.

## II.    Discussion

Questions of personal jurisdiction are subject to *de novo* review. Federated Mut. Ins. Co. v. FedNat Holding Co., 928 F.3d 718, 720 (8th Cir. 2019). "A federal court in a diversity action may assume jurisdiction over nonresident defendants only to the extent permitted by the long-arm statute of the forum state and by the Due Process Clause." Dever v. Hentzen Coatings, Inc., 380 F.3d 1070, 1073 (8th Cir. 2004) (internal quotation marks omitted) (quoting Morris v. Barkbuster, Inc., 923 F.2d 1277, 1280 (8th Cir. 1991)). The Arkansas long-arm statute confers jurisdiction to the fullest constitutional extent. Lawson v. Simmons Sporting Goods, Inc., 569 S.W.3d 865, 870-71 (Ark. 2019) (citing Ark. Code Ann. § 16-4-101(A)-(B)). Our

task, then, is to determine whether the exercise of personal jurisdiction comports with due process. Dever, 380 F.3d at 1073.

Jurisdiction over a defendant does not offend due process's "'traditional notions of fair play and substantial justice'" if the defendant has "minimum contacts" with the forum state. World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 291-92 (1980) (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)). A defendant's contacts "'must permit the defendant to reasonably anticipate being haled into court there.'" Creative Calling Sols. v. LF Beauty Ltd., 799 F.3d 975, 980 (8th Cir. 2015) (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474-75 (1985)). With respect to interstate contractual obligations, the Supreme Court has "emphasized that parties who 'reach out beyond one state and create continuing relationships and obligations with citizens of another state' are subject to regulation and sanctions in the other State for the consequences of their activities." Burger King, 471 U.S. at 473 (quoting Travelers Health Assn. v. Virginia, 339 U.S. 643, 647 (1950)).

We apply a five-factor test to determine the sufficiency of a defendant's contacts: (1) the nature and quality of the contacts, (2) the quantity of the contacts, (3) the relationship of the cause of action to the contacts, (4) the interest of the forum state in providing a forum for its residents, and (5) the convenience or inconvenience of the parties. Fastpath, Inc. v. Arbela Techs. Corp., 760 F.3d 816, 821 (8th Cir. 2014). In contract disputes, we first consider the role of the contract in the personal jurisdiction analysis before addressing the five factors. Id. A defendant does not subject itself to jurisdiction in a forum state by merely contracting with a resident of that state. Creative Calling Sols., 799 F.3d at 980. Instead, we must evaluate "'prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing.'" Id. (quoting Burger King, 471 U.S. at 479).

Atalla, relying on Arkansas Rice Growers Cooperative Ass'n v. Alchemy Industries, Inc., argues that only contacts made in his individual capacity, not his corporate capacity, can subject him to jurisdiction in his individual capacity. 797 F.2d 565, 574 (8th Cir. 1986). The United States Supreme Court has "reject[ed] the suggestion that employees who act in their official capacity are somehow shielded from suit in their individual capacity." Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 781 n.13 (1984) (discussing Calder v. Jones, 465 U.S. 783, 790 (1984)). The Supreme Court has directed courts to consider and assess individually each defendant's contacts with the forum state. Calder, 465 U.S. at 790.

Atalla's contacts with Arkansas are such that he should have reasonably anticipated being haled into court in Arkansas. Atalla's actions, while negotiating the legal services agreement and during its performance and enforcement, were both in an individual and a corporate capacity. Atalla's personal guaranty was an essential part of the negotiations of the legal services agreement. The firm made plain that it would not represent Cuker without Atalla's personal guaranty. When the agreement was finalized Atalla signed the contract separately in each capacity. The contract specifically provides that the firm was entitled to rely on Atalla's signature in his capacity as guarantor. This understanding is buttressed by Atalla's pre-litigation conduct during which he responded to Henry's demand letter in his individual capacity as co-signer and asserted that the demand personally harmed him.

When considering the sufficiency of the contacts in terms of the five factors set out in Fastpath, the record makes plain that Atalla's contacts with Arkansas involve more than just his guaranty. The language of the contract itself provided for Cuker to perform its obligations in the Western District of Arkansas. As personal guarantor of Cuker's performance, it was reasonable and foreseeable for Atalla to anticipate being haled into that same court if Cuker failed to perform. In addition, Atalla made calls and sent hundreds of emails to Henry while Henry was in Arkansas. And he traveled to Arkansas on three occasions related to the litigation. When all of the

circumstances are viewed in the aggregate, Atalla had fair warning that he could be subject to jurisdiction in Arkansas. Burger King, 471 U.S. at 472-73 (holding that a defendant has "fair warning" if he purposefully directs his activities at residents of the forum and if the litigation results from alleged injuries arising out of or relating to those activities.).

Next, Atalla renews his claim that his personal guaranty is unenforceable as a matter of law because his obligations are not adequately specified. He contends that under Arkansas law "[g]uarantors are entitled to a strict construction of their undertaking and cannot be held liable beyond the strict terms of their contract." See Inter-Sport, Inc. v. Wilson, 661 S.W.2d 367, 368 (Ark. 1983). Atalla, however, does not explain how a strict construction of his guaranty would avoid liability for the firm's legal fees. "For a guarantor to become liable under a guaranty of payment, there need only be a failure of the primary obligor to make payment." First Am. Nat. Bank v. Coffey-Clifton, Inc., 633 S.W.2d 704, 705 (Ark. 1982).

The express terms of the legal services agreement evidence an intent to hold Atalla liable to the same extent as Cuker's liability. In its first paragraph, the legal services agreement jointly designates as the firm's client Cuker and Atalla in his capacity as guarantor. Thereafter, the agreement makes no reference to Cuker or Atalla, referring to them as "the client." The agreement's plain language evidences a clear intent that the obligations extended to both. In addition, the final paragraph states that the client agrees to be bound by the terms of the agreement, which Atalla signed as president and individual guarantor. By designating the principal and the guarantor as the contracting party, Atalla guaranteed each of Cuker's contractual obligations, including the retainer, monthly deposits, and replenishment of the trust account as soon as it dropped below $30,000. There is nothing in the legal services agreement to suggest that it lacked adequate specificity. The terms impose the same liability on Atalla as on Cuker, and he became liable when Cuker failed to perform. Atalla knowingly accepted the benefit of the firm's representation in exchange for his

-7-

personal guaranty of payment, and he cannot now deny the validity of that agreement. See Crain v. Foster, 322 S.W.2d 443, 446 (Ark. 1959).

Finally, Atalla contends that the district court erred in precluding his argument that the attorney fees were unreasonable under judicial estoppel. We review application of estoppel for abuse of discretion. Kirk v. Schaeffler Grp. USA, Inc., 887 F.3d 376, 384 (8th Cir. 2018). We apply state not federal elements of estoppel in diversity cases. Spencer v. Annett Holdings, Inc., 757 F.3d 790, 797 (8th Cir. 2014).

By ordering Walmart to pay all of the fees Cuker owed the firm, Atalla was relieved as personal guarantor. It was not until the firm sought legal recourse for Cuker's delay in paying the award to the firm that Atalla questioned the reasonableness of the fees. The district court "emphasize[d] that it *already scrutinized*" the invoices Atalla wished to challenge and "*already determined*" that the rates and fees were reasonable. (emphasis in original). The district court's *sua sponte* invocation of estoppel was not an abuse of discretion. See, e.g., Hanig v. City of Winner, 527 F.3d 674, 678 (8th Cir. 2008) (holding that the district court "properly invoked res judicata to avoid 'unnecessary judicial waste'") (quoting Arizona v. California, 530 U.S. 392, 412 (2000)).

Although the district court cited to judicial estoppel, the court's concern focused on the inconsistent positions Atalla took at different phases of the litigation. Arkansas has long recognized the doctrine against inconsistent positions, also called equitable estoppel. Dupwe v. Wallace, 140 S.W.3d 464, 470-71 (Ark. 2004). This doctrine "is much broader than judicial estoppel." Id. at 470. Equitable estoppel applies to inconsistent positions and operates to "prevent one who accepts the benefit of a judgment or decree from questioning its validity or opposing the enforcement of its terms." Id. at 470-71 ( quoting19 Am. Jur. Estoppel § 64).

Although the district court used the term judicial estoppel, it is plain that its reasoning and the record supports equitable estoppel. We can affirm on any basis supported by the record. <u>Nationwide Prop. & Cas. Ins. Co. v. Faircloth</u>, 845 F.3d 378, 383 (8th Cir. 2016).

## III. Conclusion

For the foregoing reasons, we affirm.

_____