# In the Iowa Supreme Court

No. 24–1566

Submitted October 24, 2025—Filed January 23, 2026

**State of Iowa ex rel. Attorney General Brenna Bird,**

Appellee,

vs.

**TikTok, Inc., TikTok LTD., TikTok PTE. LTD., ByteDance LTD.,** and **ByteDance, Inc.,**

Appellants.

Appeal from the Iowa District Court for Polk County, Jeffrey Farrell, judge.

Entities associated with the TikTok social media platform seek interlocutory review of the district court's denial of their motion to dismiss for lack of specific personal jurisdiction. **Affirmed.**

McDermott, J., delivered the opinion of the court, in which all justices joined.

David Yoshimura (argued), Nick Klinefeldt, and Emily R. O'Brien of Faegre Drinker Biddle & Reath LLP, Des Moines, and Emily Ullman (argued), Alexander A. Berengaut, Neema Sahni, and J. Hardy Ehlers of Covington & Burling LLP, Washington, D.C., for appellants.

Brenna Bird, Attorney General, Eric H. Wessan (argued), Solicitor General, and William R. Pearson, Assistant Attorney General, and David H. Thompson, Brian W. Barnes, and John D. Ohlendorf of Cooper & Kirk, PLLC, Washington, D.C., for appellee.

Anne M. Voigts of Pillsbury Winthrop Shaw Pittman LLP, Palo Alto, California, and Matthew D. Callanan of Belin McCormick, P.C., Des Moines, for amici curiae Professors Alan Trammell and Derek Bambauer.

Leslie C. Behaunek of Nyemaster Goode, P.C., Des Moines, for amicus curiae NetChoice.

**McDermott, Justice.**

The TikTok social media application (or "app") has become a staple of life for a vast swath of the American population, and particularly for teenagers. To get younger users, the platform needs to appear safe to parents. The State of Iowa sued TikTok, Inc. and its related entities, alleging they lied about the app's safety by maintaining a "12+" age rating on app stores despite the presence of mature and age-inappropriate content. The TikTok entities moved to dismiss the case, arguing that the Iowa district court lacked personal jurisdiction over them. The district court denied the motion. We granted the defendants' application for interlocutory review.

I.

The defendants are five related corporate entities responsible for the TikTok platform: TikTok, Inc., TikTok, LTD., TikTok, PTE. LTD., ByteDance LTD., and ByteDance, Inc. (Because none of the defendants argue for distinct treatment, we address them collectively.) Users access the TikTok platform through an app, typically downloaded on a phone or tablet. The TikTok app offers short videos created and uploaded by users, often set to popular music, that are then made available to other users to view and react to. The TikTok app was the most downloaded app in the world in 2022; the platform has over a billion global users.

To make the app available to consumers, TikTok lists the app on third-party digital storefronts, including the Apple App Store, Google Play Store, and Microsoft Store. To offer an app on the Apple App Store, developers must complete an age-rating questionnaire. Apple's questionnaire asks developers to describe the prevalence of four content categories: "Alcohol, Tobacco, or Drug Use or References," "Sexual Content and Nudity," "Mature/Suggestive Themes,"

and "Profanity or Crude Humor." For each category, the developer is asked to describe the prevalence of that content as "None," "Infrequent/Mild," or "Frequent/Intense." TikTok answered "Infrequent/Mild" for every category. Based on TikTok's representations, Apple assigned the TikTok app a "12+" age rating. The next higher (and highest) rating is "17+". Apple offers the option to choose an age rating higher than the one the questionnaire generates, but TikTok has at all times elected to keep the "12+" rating.

TikTok markets the app in Iowa. Downloads have been robust—devices with an Iowa IP address have activated the TikTok app hundreds of thousands of times. When Iowa users download the app, they enter into a "Terms of Service" agreement with TikTok. The terms of service agreement is governed by California law. Under the agreement, TikTok gives users access to the TikTok platform. Users allow TikTok to collect data about their use of the platform, including location data. TikTok then uses location-tracking technology to serve Iowa-specific advertisements and curate content for Iowa users.

The State of Iowa filed a petition against the defendants alleging violations of the Iowa Consumer Frauds Act. *See* Iowa Code § 714.16 (2024). The lawsuit claims that the defendants engage in deceptive and unfair practices regarding the app's age rating and the age-appropriateness of its content. Citing numerous examples, the State alleges that the app's "12+" rating is misleading because the platform frequently features intense profanity, sexual content, mature themes, and references to alcohol, tobacco, and drugs. Although TikTok offers a "Restricted Mode" setting to further limit the appearance of inappropriate content, the State alleges that this setting does not work as TikTok claims. The State further alleges that TikTok's representations about its "Community Guidelines," which purportedly moderate content to age-restrict mature videos

that appear on the platform, are similarly untrue. Along with its lawsuit, the State also sought a temporary injunction to enjoin TikTok from making certain representations about the app's content and age ratings during the litigation.

The TikTok entities moved to dismiss the petition for lack of personal jurisdiction, failure to state a claim, and immunity under section 230 of the Federal Communications Decency Act. *See* 47 U.S.C. § 230. The district court denied the motion to dismiss, concluding that it had personal jurisdiction over the TikTok entities, that the State had pleaded a valid claim, and that section 230 did not apply to the specific claims alleged. The district court also denied the State's motion for a temporary injunction, holding that the State failed to demonstrate irreparable harm. The defendants sought an interlocutory appeal on the jurisdiction ruling, which we granted.

II.

We review a ruling on a motion to dismiss for lack of personal jurisdiction for correction of errors at law. *Book v. Doublestar Dongfeng Tyre Co.*, 860 N.W.2d 576, 582 (Iowa 2015). In doing so, we accept the facts alleged in the petition and the contents of uncontroverted affidavits as true. *Id.* Once the plaintiff establishes a prima facie case for personal jurisdiction, the burden shifts to the defendant to rebut it. *Shams v. Hassan,* 829 N.W.2d 848, 853 (Iowa 2013).

The sole issue on appeal is whether the district court properly exercised personal jurisdiction over the defendants. Iowa law authorizes the exercise of personal jurisdiction to the widest extent permitted by the Due Process Clause of the Fourteenth Amendment to the United States Constitution. Iowa R. Civ. P. 1.306. As a result, our personal jurisdiction analysis in this case collapses into an inquiry about the scope of the Due Process Clause's limits. *Sioux Pharm, Inc. v. Summit Nutritionals Int'l, Inc.,* 859 N.W.2d 182, 188 (Iowa 2015).

To comply with due process, a defendant must have sufficient minimum contacts with the forum state such that requiring the defendant to litigate there "does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Myer*, 311 U.S. 457, 463 (1940)). The United States Supreme Court often describes two types of personal jurisdiction: general and specific. *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 358 (2021). A state court may exercise general jurisdiction over a defendant only when the defendant is "essentially at home" in the forum. *Id.* (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). For a corporate defendant, general jurisdiction usually exists only in two places: the state of incorporation and the state of the principal place of business. *Kelchner v. CRST Expedited, Inc.*, ___ N.W.3d ___, ___, 2025 WL 3682990, at *4 (Iowa Dec. 19, 2025); Anthony J. Gaughan, *The Unsettled State of Corporate General Personal Jurisdiction*, 103 Neb. L. Rev. 131, 133 (2024). The State of Iowa in this case does not argue that the TikTok entities are subject to general jurisdiction in Iowa.

Specific jurisdiction is a claim-specific inquiry. *Ford Motor Co.*, 592 U.S. at 359. It has two primary requirements: (1) a defendant must have "purposefully avail[ed] itself of the privilege of conducting activities within the forum state," and (2) the plaintiff's claims "must arise out of or relate to" those activities. *Id.* (first quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958); and then quoting *Bristol–Myers Squibb Co. v. Super. Ct.*, 582 U.S. 255, 262 (2017)); *see also Sioux Pharm, Inc.*, 859 N.W.2d at 196. The critical consideration is whether the defendant's conduct and connection with the forum are substantial enough that it "should reasonably anticipate being haled into court there." *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). Jurisdiction thus

cannot rest on "random, isolated, or fortuitous" contacts. *Keeton v. Hustler Mag., Inc.*, 465 U.S. 770, 774, (1984). Rather, the defendant must have deliberately "reached out beyond" its home state by, for instance, "exploit[ing] a market" in the forum or "entering a contractual relationship centered there." *Ford Motor Co.*, 592 U.S. at 359 (alteration in original) (quoting *Walden v. Fiore*, 571 U.S. 277, 285 (2014)).

**A. Minimum Contacts.** The TikTok entities argue that they have not purposefully availed themselves of the Iowa market. They argue that the terms of service agreement is a standardized, nationwide contract not directed specifically at Iowa. And they characterize any contact with Iowa as the result of the "unilateral activity" of third parties—namely, Iowa users choosing to download the app from third-party storefronts. The necessary contacts to generate specific personal jurisdiction, they emphasize, must be "with the forum State itself," not merely with people who reside there. *Walden*, 571 U.S. at 285.

But the unilateral-activity argument fails where a defendant actively cultivates and monetizes a relationship with a state's residents. For instance, in *Keeton v. Hustler Magazine, Inc.*, a plaintiff filed a libel suit in New Hampshire against an out-of-state magazine publisher. 465 U.S. at 772. The publisher's contacts with New Hampshire were limited to its magazine sales there. *Id.* The Supreme Court held that the publisher could be sued in New Hampshire because it "continuously and deliberately exploited the New Hampshire market" for sales. *Id.* at 781. Although the magazine was "aimed at a nationwide audience," the publisher could claim "no unfairness in calling it to answer for the contents" in New Hampshire based on the magazine's considerable distribution and sales there. *Id.*

The TikTok entities rely on *Fastpath, Inc. v. Arbela Technologies Corp.*, 760 F.3d 816 (8th Cir. 2014), to support their position. In *Fastpath*, an Iowa software business and an out-of-state corporation entered into mutual confidentiality and noncompete agreements to explore a potential business partnership. *Id.* at 819. When the Iowa corporation later sued in Iowa for breach of the agreement, the defendant moved to dismiss for lack of personal jurisdiction. *Id.* The United States Court of Appeals for the Eighth Circuit affirmed the district court's dismissal, concluding that the defendant had not purposefully directed its activities at Iowa, noting among other points that its marketing efforts were not actively targeted at Iowa customers. *Id.* at 824. TikTok seeks to analogize that holding here, arguing that—much like the defendant in *Fastpath*—merely entering into an agreement with an Iowa resident constitutes "incidental" rather than "targeted" contact.

But *Fastpath*'s holding rested on the fact that the agreement was silent as to where the contemplated sharing of information was to take place. *Id.* at 822. The agreement was entered into in anticipation of potential business opportunities, yet the parties ultimately never did any business together. *Id.* TikTok, by contrast, has intentionally cultivated an immensely profitable business in Iowa by entering into ongoing contractual relationships (via the terms of service) with hundreds of thousands of Iowans who regularly use the app. Further, the court in *Fastpath* found that the agreement did not require performance in Iowa; to the extent the companies shared any information, that sharing occurred outside Iowa. *Id.* But the terms of service here both require performance and contemplate future consequences within Iowa. Every time an Iowa user accesses the content on the app or TikTok collects the user's data, the

reciprocal contractual obligations are being performed where the user resides—in Iowa.

In our view, *Sioux Pharm, Inc. v. Summit Nutritionals International, Inc.* is a far closer analog. 859 N.W.2d 182. In that case, an Iowa manufacturer sued an out-of-state corporate defendant for unfair competition. *Id.* at 186–87. The defendant's website claimed that it had a manufacturing facility in Iowa, when in fact another entity (one of the defendant's suppliers) owned and operated the facility. *Id.* The defendant argued that the erroneous statement on its passive website was insufficient to create specific jurisdiction in Iowa. *Id.* at 187. We disagreed, concluding that the defendant purposefully availed itself of the Iowa market by actively promoting its product to Iowa residents on the website and selling its product here. *Id.* at 196. We thus held that the district court had specific personal jurisdiction over the out-of-state defendant. *Id.* at 197.

The State's petition alleges an even stronger connection here. Although the user initiates the download of the app, the defendants thereafter engage in active and purposeful conduct with the app's users in Iowa. The State alleges that the defendants do not merely maintain a passive website accessible in Iowa but rather "actively serve content to and collect data from" users' devices here. And crucially, TikTok uses this Iowa-specific data, including location information, to target advertisements to Iowa users from which it generates revenue.

The defendants have entered ongoing contractual relationships with hundreds of thousands of Iowa residents. They involve not isolated contacts but continuous transactions in which the defendants actively curate content for Iowa users and, in exchange, extract valuable data. That TikTok is available nationwide, and not just in Iowa, does not defeat jurisdiction in Iowa under the analysis. *See Keeton*, 465 U.S. at 781 (where defendants "continuously and

deliberately exploit" a market, they must "reasonably anticipate being haled into court" there). By monetizing the Iowa market through targeted advertising and data collection under the terms of service, the defendants have purposefully availed themselves of the privilege of doing business in the state. The State has thus established the defendants' sufficient minimum contacts with Iowa.

**B. Arising Out of or Relating to.** We turn to whether the State's claims "arise out of or relate to" those contacts. *Ford Motor Co.*, 592 U.S. at 359 (quoting *Bristol–Myers*, 582 U.S. at 262). Adequate protection of foreign defendants means offering those defendants a "fair warning" that their activities may subject them to the jurisdiction of a foreign court. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985) (quoting *Shaffer v. Heitner*, 433 U.S. 186, 218 (1977) (Stevens, J., concurring in the judgment)). Although what it means to "arise out of or relate to" does not require a strict causal relationship between the defendant's contacts and the plaintiff's claims, the phrase must incorporate real limits to adequately protect foreign defendants. *Ford Motor Co.*, 592 U.S. at 362.

The defendants suggest that *Bristol–Myers Squibb Co. v. Superior Court* provides a useful analog. 582 U.S. 255. In that case, a group of plaintiffs sued an out-of-state pharmaceutical company in California alleging that the company's drug had damaged their health. *Id.* at 259. Although the company sold the drug and engaged in other business in California, it did not develop, manufacture, or label the drug in California. *Id.* Perhaps more importantly, the plaintiff group included many nonresidents of California who did not obtain the drug from a California source. *Id.* The Supreme Court held that California had no jurisdiction to hear the nonresidents' claims because those claims lacked "a connection between the forum and the specific claims at issue." *Id.* at 265.

The TikTok entities argue that the required connection with its Iowa contacts is similarly missing here because the State alleges consumer fraud through the misleading age ratings and *not* a breach of the terms of service. More pointedly, the defendants assert that the allegedly deceptive actions—the questionnaire responses, decisions about age ratings, statements in the restricted-mode offering and app guidelines—all concern conduct that took place outside Iowa. They emphasize that the harm alleged by the State is not born of a terms of service violation, and that finding personal jurisdiction based on merely entering into the terms of service would create an impermissible form of general jurisdiction.

But in *Bristol–Myers Squibb*, the nonresident plaintiffs' claims were more clearly untethered to the forum because those plaintiffs did not purchase, use, or suffer injuries from the drug in California. *Id.* at 264. A more fitting analysis comes from the Supreme Court's decision in *Ford Motor Co. v. Montana Eighth Judicial District Court.* 592 U.S. 351. In *Ford,* the Court considered whether a state had jurisdiction over a vehicle manufacturer in a product liability suit where its vehicles were not first sold, designed, or manufactured in the state. *Id.* at 356–57. In its analysis, the Court made clear that the "arise out of and relate to" requirement does not demand a strict causal link. *Id.* at 362. Concluding that jurisdiction is proper where a defendant "serves a market" in a state and the injury arises from that service, the Court held that the plaintiffs' claims arose out of or related to other services Ford provided surrounding the use and sale of its vehicles in the state. *Id.* at 363.

We have little trouble concluding that the claims here relate to the defendants' contacts with Iowa. The alleged deceptive age ratings were the very tool used to induce Iowa parents and children to enter into the terms of service

and download the app. The contacts with the app's users in Iowa, the State alleges, exploited the market for Iowa users' data to generate advertising revenue. The petition alleges that the defendants secured and maintained this market *through* the deceptive conduct at issue—specifically, by misrepresenting the safety of the app to secure a "12+" rating. Without the alleged misrepresentations, the State asserts that many Iowa parents would not have permitted their children to download the app, enter into the terms of service agreement, or provide the data that the defendants monetize.

We reject TikTok's contention that a contract-based contact generally only supports a breach of contract claim. As the Nevada Supreme Court recently recognized in similar litigation, when a digital platform's business model relies on maximizing user engagement within a state, consumer protection claims regarding the safety of that platform "relate to" the company's presence in that forum. *TikTok, Inc. v. Eighth Jud. Dist. Ct.*, 578 P.3d 640, 649 (Nev. 2025) (en banc) (upholding personal jurisdiction because TikTok's systematic service to and profit from Nevadans through data collection, data sales, and targeted advertising were sufficiently linked to deceptive trade practice claims). The terms of service with Iowa users enable the data extraction and advertising that form the basis of the defendants' business in Iowa. The defendants' use of deceptive practices to induce Iowans into these very relationships relates to the defendants' contacts.

Courts in other states have similarly rejected jurisdiction-based arguments by TikTok entities along these same lines. *See, e.g., State v. TikTok Inc.*, No. 12CV–23–65, 2024 WL 5690575, at *2–3 (Ark. Cir. Ct., May 15, 2024) (finding specific personal jurisdiction exists where TikTok utilized service contracts with residents to generate revenue via geo-targeted advertisements, as

those contacts sufficiently relate to the state's claims of deceptive trade practices regarding app store age ratings), *cert. denied*, No. CV–24–522, 2025 WL 1522873 (Ark. 2025); *State v. TikTok Inc.*, 245 N.E.3d 681, 688–92 (Ind. Ct. App. 2024) (holding that TikTok's continuous data transmission and exchange of platform content for user personal data constituted sufficient contacts with the state to establish specific personal jurisdiction over claims alleging deceptive acts aimed at inducing Indiana residents to download the app); *State v. TikTok, Inc.*, No. 2025–CC–01179, 2025 WL 3280288 (La. Nov. 25, 2025) (denying TikTok's application for a supervisory writ and upholding the lower courts' denial of a motion to dismiss for lack of personal jurisdiction); *Lynn Fitch ex rel. State v. TikTok, Inc.*, No. G2024–1235, at 3–7 (Miss. Ch. Ct. Aug. 27, 2025) (ruling that specific personal jurisdiction was proper based on TikTok's state-specific marketing, geo-targeted advertising, local charitable donations, and lobbying efforts, all of which related to the state's consumer protection claims); *State ex rel. Jackson v. TikTok Inc.*, No. 24CV032063–910, 2025 WL 2399525, at *3–5 (N.C. Super. Ct. Aug. 19, 2025) (denying a motion to dismiss because TikTok's terms of service agreements, data collection practices, targeted advertising, and in-state marketing were sufficiently related to the state's claims regarding the platform's alleged harmful and addictive nature toward minors). *See generally State v. Meta Platforms, Inc.*, 346 A.3d 489 (Vt. 2025) (affirming the exercise of personal jurisdiction where Meta's service contracts, data tracking, and Vermont-specific user studies were inherent to the business model giving rise to the state's claims of unfair practices and misrepresentations).

**C. Fair Play and Substantial Justice.** Having concluded that the defendants have sufficient contacts with Iowa and that the State's claims related to those contacts, we examine in broad form whether exercising jurisdiction is

"reasonable" and "does not offend traditional notions of fair play and substantial justice." *Harding v. Sasso*, 2 N.W.3d 260, 264 (Iowa 2023) (quoting *Ford Motor Co.*, 592 U.S. at 351). In this analysis, we consider the burden on the defendant, the forum state's interest, and the plaintiff's interest in effective relief. *Id.* at 265.

As to the litigation burden, the defendants argue that forcing them to potentially litigate in fifty states would impose a considerable burden. But we find that concern outweighed by the fact that they are multinational corporations who have reached into Iowa and allegedly made misrepresentations about an app that was made available, downloaded, and used in Iowa by thousands of Iowa teens in exchange for their personal information. Conversely, Iowa has a "manifest interest" in providing a forum for its residents to seek redress for consumer fraud and in protecting its youth from harmful content. *Burger King Corp.*, 471 U.S. at 473 (quoting *McGee v. Int'l Life Ins.*, 355 U.S. 220, 223 (1957)). We find nothing unreasonable in the notion that the defendants must defend in Iowa against claims brought by the State on behalf of its own residents who were allegedly targeted and harmed within the state.

III.

Intentionally conducting business within a state comes with both the benefit of the protection of the state's laws and the burden of being haled into court to answer for misconduct related to its operations there. It is no defense to jurisdiction that the business operates in many other states too. The district court properly exercised specific personal jurisdiction over the defendants, and we thus affirm the district court's denial of the defendants' motion to dismiss.

**Affirmed.**